237 N.J. Super. 71 (1989)
566 A.2d 1177
CONSTANCE HOLLOWAY, PLAINTIFF,
v.
STATE OF NEW JERSEY, DEFENDANT-THIRD PARTY PLAINTIFF,
v.
MUSKIN CORPORATION, MUSKIN INC., KDI SYLVAN POOLS, INC., AND PELICAN SWIM & SKI CENTER, INC., THIRD PARTY DEFENDANTS-FOURTH PARTY PLAINTIFFS,
v.
SK PLASTICS CORPORATION, FOURTH PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Hunterdon County.
Decided March 22, 1989.
*72 Peter Shebell, Jr. for Plaintiff, (Shebell & Schibell, attorneys).
Benjamin Clarke, for Defendant-Third Party Plaintiff, State of New Jersey (Peter N. Perretti, Jr. Attorney General of New Jersey).
William T. Connell, for Third Party Defendant-Fourth Party Plaintiff, Muskin Corporation (Dwyer, Connell & Lisbona, attorneys).
William J. Gannon, for Third Party Defendant-Fourth Party Plaintiff, Muskin Inc. (Ryan & Gannon, attorneys).
Lynn Schundler, for Third Party Defendant-Fourth Party Plaintiff, KDI Sylvan Pools, Inc. (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Keith G. Von Glahn on the Brief).
James H. Knox, for Third Party Defendant-Fourth Party Plaintiff, Pelican Swim & Ski Center, Inc. (Gebhardt & Keifer, attorneys).
Alen G. Tresser, for Fourth Party Defendant, SK Plastics Corp. (James & Addas, attorneys; John Potenza on the Brief).
BERNHARD, J.S.C.
This is a pre-trial motion brought by Muskin Inc., the third party defendant-fourth party plaintiff, in a products liability *73 case for an Order granting Summary Judgment under R. 4:46-1 et seq. in favor of the third party defendant-fourth party plaintiff, Muskin Inc., against all parties on all claims.
On July 10, 1981 the plaintiff Constance Holloway was injured while an inmate at the Correctional Institution for Women ("the Institution") in Clinton, New Jersey. On that date, the plaintiff went for a swim in an above-ground swimming pool (4 feet deep, 24 feet in diameter) located at the Institution. The pool was owned and maintained by the defendant, State of New Jersey (the "State"). At one point the plaintiff climbed upon a swimming pool deck which was erected by the Institution's maintenance department. The plaintiff dove into the swimming pool and injured her back and neck, ultimately resulting in quadriplegia.
The swimming pool in question was purchased by the State of New Jersey on June 13, 1974 from the third party defendant-fourth party plaintiff, Sylvan Pools, Inc. The third party defendant-fourth party plaintiff, Muskin Corporation, manufactured the swimming pool. Sometime prior to the incident, a replacement pool liner was purchased by the defendant State from Pelican Swim & Ski Center Inc., the third party defendant-fourth party plaintiff. The replacement liner was manufactured by the fourth party defendant, SK Plastics Corp.
In February of 1981, six months prior to the injury of the plaintiff, U.S. Leisure Incorporated ("U.S. Leisure"), purchased assets of the Leisure Products Group of Amcord, Inc. from Gifford-Hill, Inc. The purchase included the assets of Little Lake Industries, a manufacturer of outdoor redwood furniture, and substantially all of the assets of Muskin Corporation, a manufacturer of above-ground swimming pools and other swimming-related products for an amount over 24 million dollars. After the purchase of the assets of Muskin Corporation, U.S. Leisure began to manufacture above-ground swimming pools in February of 1981.
*74 On October 28, 1983, U.S. Leisure amended its Articles of Incorporation changing its name to Muskin Inc.
The State, defendant-third party plaintiff, charged Muskin Inc., third party defendant-fourth party plaintiff, with (1) strict liability as a successor corporation to Muskin Corporation for manufacturing defects in the Muskin pool ("products-line" theory) and (2) liability for breach of a continuing duty to warn.[1]
Muskin Inc. now moves for summary judgment, arguing that Muskin Inc. should be relieved from liability as a successor corporation under New Jersey case law since Muskin Corporation is a "viable" corporation; and failure to find "successor corporation liability", as a matter of law, removes any after-sale duty to warn the plaintiff of dangers related with the product.

I. Strict Products Liability Claim
In the 1981 case of Ramirez v. Amsted Industries, Inc. 86 N.J. 332 (1981), the New Jersey Supreme Court enunciated the standard for determining successor liability where one corporation acquires substantially all of the manufacturing assets of another corporation, and the successor corporation continues essentially the same manufacturing operation as the predecessor corporation.
The court in Ramirez held that "where one corporation acquires all or substantially all the manufacturing assets of another corporation ... the purchasing corporation is "strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed *75 by the selling corporation or its predecessor." Id. at 358. The Ramirez Court utilized the tri-partite analysis of Ray v. Alad Corp., 19 Cal.3d 22, 560 P.2d 3, 136 Cal. Rptr. 574 (1977) as policy considerations for imposing strict tort liability on successor corporations. These considerations are:
(1) The virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) The successor's ability to assume the original manufacturer's risk-spreading role, and (3) The fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business.
Ramirez, 86 N.J. at 349 [citing Ray, 19 Cal.3d at 31, 560 P.2d at 9, 136 Cal. Rptr. at 580]. The most important policy consideration adopted from Ray by the Court in Ramirez is the two prong test of whether 1). the plaintiff's remedies against the predecessor corporation have been destroyed and 2). the successor corporation caused the destruction by its acquisition of the predecessor corporation.

A. Destruction vel non of Third Party Plaintiff's Remedy Against Muskin Corporation.
The recent unreported United States District Court case of Schaefer, Estate of v. U.S. Leisure Incorporated, No. 85-807, (D.N.J. Nov. 4, 1988), involved Muskin Corporation and U.S. Leisure (previous corporate name of Muskin Inc.), two defendants in the case sub judice. This court finds Judge Barry's decision helpful in its analysis and insightful in its logic.
In Schaefer, the decedent dove into an above-ground swimming pool on June 18, 1983. The pool was manufactured by Muskin Corporation and owned by third party defendants John and Carol Cavavaugh. The decedent sustained a quadriplegic injury as a result of diving into the swimming pool. Judge Barry found that the underlying principle governing the Ramirez decision was the inability of plaintiff to recover from the predecessor corporation due to the acquisition by the successor corporation. Schaefer, supra, Slip op. at 12. Justice Schreiber, *76 in his concurring opinion in Ramirez stated that "[t]he central thesis of this [successor corporation liability] methodology is premised on the elimination by the successor of an effective remedy. That is an essential condition precedent to recovery." Ramirez, 86 N.J. at 358. In Nieves v. Bruno Sherman Corp., 86 N.J. 361, 370-71 (1981), the New Jersey Supreme Court relied on Ray, holding that the pinnacle issue of successor liability is not so much the availability of a viable successor but the unavailability of the original manufacturer due its divestiture of its assets and its dissolution.
Muskin Inc. contends, just as it did in Schaefer (while still incorporated under the name of U.S. Leisure), that because Muskin Corporation is a viable company and holds, as the named insured, insurance policies providing over 30 million dollars in coverage, Muskin Inc. should be relieved of any liability under the successor corporation theory.[2]
The movant has indicated that the predecessor corporation is "viable" and that it is now the non-movants' burden to demonstrate the indicated insurance coverage is inadequate to satisfy the judgment against Muskin Corporation. The State raised the issue of the insurance policy's $100,000.00 deductible. The State asserts the movant has failed to demonstrate that Muskin Corporation is able to "cover" the deductible, hence, the movant is not entitled to summary judgment. Muskin Corporation, through its attorney, defused the State's argument by presenting *77 an affidavit from the Assistant Secretary of Muskin Corporation.[3]
The State also argues that the insurance policies do not equate to assets and that Muskin Corporation is just a "shell" corporation. This court does not view this part of the State's argument to be well-grounded since either 100,000 shares of blue chip stocks valued at 1,000,000.00 or a certified insurance check for $1,000,000.00 are equally sufficient to satisfy a hypothetical $1,000,000.00 judgment. Therefore, this court finds that the viability of Muskin Corporation does not satisfy the first prong of the Ramirez rationale.

B. Any Destruction of the Third Party Plaintiff's Remedy Was Not Caused By Muskin Inc.'s Acquisition.
Assuming arguendo, that this court had found that Muskin Inc. had destroyed the third party plaintiff's effective remedy against the original manufacturing corporation, such destruction alone is not enough. The successor corporation must cause the destruction by its acquisition of the predecessor corporation. Ramirez, 86 N.J. at 349.
Muskin Inc. argues that even if Muskin Corporation is no longer "viable" and unable to "cover" the insurance deductible, Muskin Inc, under the analsis of Ramirez, did not cause the destruction of the third party plaintiff's remedy. At the time of acquisition, Muskin Corporation received over 24 million dollars for the assets sold to Muskin Inc. Muskin Corporation was extremely liquid after the acquisition. If Muskin Corporation later paid out these moneys for other claims or to other corporations, it was not the act of Muskin Inc. that caused the *78 destruction of the plaintiff's remedy. Since Muskin Inc. did not cause the destruction of plaintiff's remedy by its acquisition of assets of Muskin Corporation, the movant is not liable under the product-line theory of successor liability.

II. Post-Sale Failure to Warn Claim
In Nieves the court imposed strict products liability when the court found a duty on the part of the successor corporation and a defect in the units. In the case sub judice, this court as already determined that no successor corporation liability exists.
The movant, Muskin Inc. cannot be held liable for breach of an after-sale duty to warn the plaintiff of dangers related to the product if no duty can be imputed to Muskin Inc. In the case of Nieves, the Supreme Court of New Jersey quoted Travis v. Harris Corp., 565 F.2d 443, 449 (7th Cir.1977) regarding factors involved in determining whether a duty to warn existed:
Succession to a predecessor's service contract, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn.
Nieves, 86 N.J. at 373.
There has been no evidence or allegation that the State of New Jersey entered into a service contract with Muskin Inc. or that Muskin Inc. ever serviced the pool owned by the defendant State. There has been no evidence to indicate that Muskin Inc. had knowledge of defects and knew of the location of the product or who was the owner of the product. To date, the State has yet to rebut Muskin Corporation's allegation that the State did not send in its warranty card. Further, no party has disputed that until the filing of the State's third party complaint, neither Muskin Inc. nor Muskin Corporation had knowledge of the State's ownership or the location of the swimming pool in question (Muskin did not sell their products directly to the ultimate consumers). In light of the absence of a factual *79 basis to substantiate an imposition of a post-sale duty to warn, this court finds that no such duty to warn existed.
Since there is no material issue of fact regarding the liability of the movant Muskin Inc., the motion for summary judgment is granted. See Judson v. People's Bank and Trust Company of Westfield, 17 N.J. 67 (1954).
NOTES
[1] This products liability case presents an unusual use of third party practice. The plaintiff did not make direct claims grounded in products liability theory against the third and fourth party defendants. Rather, the State, the direct defendant, made claims against the various third and fourth party defendants (manufacturers and dealers) as derivative claims based on the plaintiff's action. Therefore, in order to preserve its third party claims, the State as third party plaintiff vigorously opposes Muskin Inc.'s motion for summary judgment.
[2] Muskin Inc. included, as part of its moving papers, a letter, dated January 20, 1989, from Muskin Corporation's counsel regarding a settlement conference directive by Judge Arnold setting forth the insurance coverage of Muskin Corporation as follows: Primary coverage of $500,000.00, $100,000.00 deductible, policy # SRL 363 4252, issued by Fidelity and Casualty Company; excess coverage of $20,000,000.00 under policy # SRU 215 35 34, issued by Continental Insurance Company; second excess coverage of $10,000,000.00 under policy # HI153097 issued by Harbor Insurance Company. Lastly, the letter states "[n]one of this coverage has been exhausted to date and the only claims made under these policies relate to the within matter."
[3] The affidavit stated that at the time of the injury to the plaintiff, Muskin Corporation was the insured by a Fidelity and Casualty Company policy # SRL 363 4252 in the amount of $500,000.00 with a $100,000.00 deductible. The affidavit also stated that in the event the present case would settle or a judgment rendered against Muskin Corporation, Muskin Corporation will satisfy the deductible. The affidavit met the requirements of R. 1:4-4(a).