*This opinion is subject to revision before
publication in the Pacific Reporter*

**2014 UT 28**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

SUMMERHAZE COMPANY, L.C.; ANTION FINANCIAL, L.C.;
DURBANO PROPERTIES, L.C.; DURBANO DEVELOPMENT, L.C.;
DURBANO LAW FIRM, P.C.; and DOUGLAS M. DURBANO,
*Petitioners and Appellants,*

*v.*

FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for AMERICA WEST BANK,
*Respondent and Appellee.*

No. 20120461
Filed July 8, 2014

Second District, Farmington
The Honorable Rodney S. Page
No. 090700093

Attorneys:

George W. Pratt, Jessica P. Wilde, Salt Lake City,
L. Miles LeBaron, Layton, for appellants

George W. Pratt, Jessica P. Wilde, Salt Lake City,
Douglas M. Durbano, L. Miles LeBaron, Layton,
for appellant Douglas M. Durbano

Brent D. Wride, Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1     Plaintiffs Summerhaze Company, L.C.; Antion Financial,
L.C.; Mr. Douglas M. Durbano; Durbano Development, L.C.;
Durbano Law Firm, P.C.; and, Durbano Properties, L.C.
(collectively Plaintiffs) appeal from the entry of summary

judgment in favor of the Federal Deposit Insurance Corporation (FDIC), successor to America West Bank, L.C. (Bank). We are asked to decide whether the district court erred when it concluded that it lacked subject matter jurisdiction over the Plaintiffs' claims after determining that Plaintiffs failed to exhaust the administrative claims review process made available to them by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). Additionally, Plaintiffs claim that the district court's dismissal for lack of subject matter jurisdiction denied them due process of the law under both the United States and Utah Constitutions. We affirm.

## BACKGROUND

¶ 2    Mr. Durbano was the chief executive officer of the Bank. Mr. Durbano was also the owner or manager of the other plaintiffs in this appeal: Summerhaze Company, L.C. (Summerhaze); Antion Financial, L.C. (Antion); Durbano Properties, L.C.; Durbano Development, L.C.; and, Durbano Law Firm, P.C. In 1985, Mr. Durbano hired Anna S. Padlo to work for him at his various companies. Then, in 2001, Mr. Durbano hired Ms. Padlo to work at the Bank. Between 2001 and 2007, Ms. Padlo embezzled over $550,000 from the Bank.[1] Plaintiffs filed a complaint against the Bank on February 10, 2009. They alleged (1) improper acceptance of unauthorized signatures, (2) negligence, and (3) liability under a theory of respondeat superior.

¶ 3    The Bank was insured by BancInsure, Inc. under a Financial Institution Bond (Bond). The Bond was an indemnity policy. Under its terms, the Bank would be indemnified in the event of losses occasioned by employee dishonesty, forgery or alteration of negotiable instruments, unauthorized signatures and endorsements, and claims expenses, among other things. The maximum coverage under the Bond was $2,000,000. Plaintiffs filed their complaint "in order to trigger the bond coverage of [the Bank's] bonding company, BancInsure, Inc." After receiving the complaint, the Bank tendered the defense of the claim to

---

[1] Ms. Padlo ultimately pleaded guilty to felony embezzlement of more than $1,000.

BancInsure, under the terms of the Bond.[2] The Bank filed an answer to the complaint on April 6, 2009.

¶ 4 On January 9, 2009, before the Plaintiffs filed their complaint, the Bank filed a declaratory judgment action against BancInsure seeking to establish that the Bank was entitled to coverage under the Bond for the losses claimed by the Plaintiffs.[3] On March 23, 2009, the Bank and BancInsure agreed to stay the declaratory judgment action because coverage under the Bond would become an issue only if the Plaintiffs proved the damages alleged in their complaint against the Bank.

¶ 5 On May 1, 2009, the Utah Department of Financial Institutions (UDFI) closed the Bank and appointed the FDIC as receiver, because the UDFI determined the Bank had failed and was operating in an unsafe manner.[4] On May 6, 2009, the FDIC mailed notice of the Bank's receivership to all of the Bank's recorded creditors. The FDIC published notice of the Bank's receivership on May 7 and again on June 8 and July 8, 2009. The notices were published in the two most prominent newspapers in Utah, the *Deseret News* and *The Salt Lake Tribune*. Both the mailed and published notices indicated that all claims against the Bank, along with proof of the claims, had to be submitted to the FDIC

---

[2] "Tender of defense" describes a common-law practice in which a person or entity against whom an action is brought gives notice of the suit to a person or entity that may ultimately be liable for payment of the judgment, by contract or implication of law. 59 AM. JUR. 2D *Parties* § 241 (2014). The purpose is to offer the person who may ultimately be liable "the opportunity to appear and defend the action," because the person or entity may be bound by the judgment. *Id.*

[3] Mr. Durbano, due to his role as both CEO of the defendant Bank, and as a plaintiff, is likely the reason the Bank filed this seemingly prescient action.

[4] After the Bank was closed, the Office of Inspector General issued a Material Loss Review that concluded the Bank failed because "management deviated from the [B]ank's business plan and did not effectively manage the risks associated with [commercial real estate] and [acquisition, development, and construction] loans." The Bank's failure resulted in a $119 million loss to the Deposit Insurance Fund.

for administrative claims review by August 5, 2009. Mr. Durbano, Durbano Development, and Durbano Law Firm were listed as creditors of the Bank and were mailed direct notice of the August 5, 2009 claims deadline. Jones Waldo Holbrook & McDonough and LeBaron & Jensen, P.C.—as counsel of record for Plaintiffs on the February 10, 2009 complaint—were also listed as creditors and received direct mailed notice from the FDIC.

¶ 6 On October 8, 2009, sixty-five days after the administrative claims review deadline, Plaintiffs filed a proof of claim with the FDIC "out of an abundance of caution." On December 3, 2009, the FDIC disallowed the claims because they were not filed by the deadline. On December 18, 2009, the district court issued a Notice of Intent to Dismiss Plaintiffs' claims for failure to prosecute. On January 10, 2010, Plaintiffs notified the Bank and the FDIC that they intended to proceed with their suit to recover the alleged damages. On January 21, 2010, Plaintiffs filed their Notice of Intent to Prosecute. With the case revived and apparently moving forward, the district court entered a scheduling order and the parties exchanged initial disclosures. On October 1, 2010, the FDIC informed Plaintiffs—in a letter that accompanied its initial disclosures—that it was pursuing a motion to dismiss.

¶ 7 Several weeks later, the FDIC filed a motion to dismiss alleging that the district court lacked subject matter jurisdiction because the Plaintiffs had failed to comply with FIRREA. The district court granted the FDIC's motion to dismiss and ruled that the court was deprived of subject matter jurisdiction because the Plaintiffs failed to file a timely proof of claim, as mandated by FIRREA. Plaintiffs filed a timely notice of appeal. We have jurisdiction under Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 8 The primary issue before us is whether the district court erred when it determined that it lacked subject matter jurisdiction. "Whether a district court has subject matter jurisdiction is a question of law" and we review the district court's determination for correctness.[5] The district court concluded it lacked subject matter jurisdiction based on its reading of FIRREA. We review

---

[5] *Utah Div. of Consumer Prot. v. Flagship Capital*, 2005 UT 76, ¶ 6, 125 P.3d 894.

the district court's interpretation of a statute for correctness and give no deference to the district court's conclusions of law.[6] Plaintiffs also argue that the dismissal of their claims was a violation of due process. "Constitutional issues, including questions regarding due process, are questions of law," and we review the lower court's conclusions for correctness.[7]

## ANALYSIS

¶ 9 Plaintiffs present three general challenges to the district court's determination that it lacked subject matter jurisdiction based on FIRREA. First, Plaintiffs contend that FIRREA is not applicable to their claims against the FDIC or the Bank. Second, Plaintiffs argue that even if FIRREA is applicable, they were not required to file a proof of claim with the FDIC because the FDIC did not "trigger" the administrative claims review process. Third, Plaintiffs argue that the dismissal of their complaint denied them due process under the law.

¶ 10 Our decision regarding the subject matter jurisdiction of the district court depends on the requirements of FIRREA. We begin with a review of FIRREA. We conclude that exhaustion of administrative remedies under FIRREA is a prerequisite to the exercise of a district court's subject matter jurisdiction. We then address each of the Plaintiffs' arguments.

### I. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES THROUGH FIRREA'S CLAIMS PROCESS DEPRIVES THE DISTRICT COURT OF SUBJECT MATTER JURISDICTION

#### A. Overview of FIRREA

¶ 11 FIRREA was passed in response to the financial crisis of the 1980s.[8] The purpose of FIRREA was to "revamp[ ] the deposit insurance fund system in order to strengthen the country's financial system."[9] FIRREA abolished the Federal Savings and

---

[6] *State v. Ostler*, 2001 UT 68, ¶ 5, 31 P.3d 528.

[7] *Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 47, 299 P.3d 990 (internal quotation marks omitted).

[8] *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279 (3d Cir. 2013).

[9] *FDIC v. Am. Cas. Co.*, 975 F.2d 677, 681 (10th Cir. 1992).

Loan Insurance Corporation and created the Resolution Trust Corporation (RTC).[10] FIRREA assigned the functions of handling failed financial institutions to the FDIC and RTC.[11] FIRREA gave the FDIC "the authority to act as receiver or conservator for failed institutions";[12] and "[a]s a receiver, the FDIC succeeds to 'all rights, titles, powers, and privileges' of the failed bank."[13] The goal of FIRREA is to expeditiously wind up the affairs of and dispose of the bulk of claims against failed financial institutions.[14]

¶ 12 To aid in the winding up of and disposal of claims against a failed financial institution, FIRREA created an administrative claims review process for institutions in receivership.[15] The process allows a receiver to settle claims against the institution in receivership and liquidate its assets.[16] After being named, the receiver must promptly publish notice to the institution's creditors, informing them that claims against the bank must be presented by a deadline, which is at least ninety days from the publication notice.[17] The receiver must also publish notice again at one month and two months after the initial publication.[18] The receiver is also required to review and pay any claim received on or before the published deadline, provided that the claim is proven to be legitimate to the satisfaction of the receiver.[19] The receiver has no discretion regarding claims filed

---

[10] *See id.*; *Thomas v. FDIC*, 255 P.3d 1073, 1078 (Colo. 2011).

[11] *See Am. Cas. Co.*, 975 F.2d at 681; *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3d Cir. 1991); *Thomas*, 255 P.3d at 1078.

[12] *Tellado*, 707 F.3d at 279.

[13] *Thomas*, 255 P.3d at 1078 (quoting 12 U.S.C. § 1821(d)(2)(A)(i)).

[14] *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011); *Thomas*, 255 P.3d at 1078.

[15] *See* 12 U.S.C. § 1821(d)(3)–(13). *See also Am. Nat'l Ins. Co.*, 642 F.3d at 1141.

[16] *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 919 (4th Cir. 1996).

[17] 12 U.S.C. § 1821(d)(3)(B)(i).

[18] *Id.* § 1821(d)(3)(B)(ii).

[19] *Id.* § 1821(d)(5)(B).

after the published deadline and must disallow and deny any late-filed claims.[20]

¶ 13  The disallowance of late-filed claims is generally final, subject to one exception:  if the claimant did not receive notice of the receivership in time to file a claim by the deadline and the claim is filed in time to permit payment of the claim, it may be paid.[21]  The receiver is required to decide the legitimacy of any claim within 180 days of receipt and notify the claimant of its determination of the claim.[22]  If the receiver denies the claim, it must notify the claimant of the reason for the denial and the procedures available for obtaining either administrative or judicial review of the denial.[23]  Following denial, a claimant may request a review of the claim within sixty days.[24]  This process for a post claim denial review gives the claimant the option to seek an administrative review, file a suit, or continue an action commenced before the appointment of the receiver.[25]  If a

---

[20] *Id.* § 1821(d)(5)(C)(i).

[21] *Id.* § 1821(d)(5)(C)(i)–(ii).

[22] *Id.* § 1821(d)(5)(A)(i).

[23] *Id.* § 1821(d)(5)(A)(iv).

[24] *Id.* § 1821(d)(6)(A).  This sixty-day deadline begins to run on the earlier of the date the claim is denied or 180 days after the claims deadline.  *See id.*

[25] *Id.*  Section 1821(d)(6)(A) also states that a claimant should file suit or continue an action already commenced in the district or territorial court of the United States for the district that contains the institution's principal place of business.  However, "state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the law of the United States."  *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).  "Congress has the power to preclude state court jurisdiction over federal claims if it so chooses," *Holmes Fin. Assocs., Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 564 (6th Cir. 1994), but the presumption of state court authority "can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests."  *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981).  "Because FIRREA does not

con't.

claimant fails to request review of a disallowed claim within sixty days, the denial is final and the claimant forfeits all further rights and remedies with respect to the claim.[26]  Finally, FIRREA states that "no court shall have jurisdiction over . . . any claim or action for payment from, or action seeking a determination of rights with respect to, the assets of any depository institution" that has been placed in receivership or "any claim relating to any act or omission" of the failed institution or the receiver, unless specifically provided for by FIRREA.[27]  Stated more plainly, FIRREA precludes court jurisdiction over any claim relating to the assets, acts, or omissions of the bank or the receiver, except as the act permits.[28]

### B.  Administrative Exhaustion

¶ 14 The doctrine of administrative exhaustion generally states that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[29]  "The doctrine is applied in a number of different situations" and can be "subject to numerous exceptions."[30]  We must look to the purposes of the doctrine and "the particular administrative scheme involved" to determine if the doctrine is applicable to a particular claim.[31]  One purpose of the doctrine is "the avoidance of premature interruption of the

---

contain a clear and unequivocal withdrawal of state court jurisdiction, . . . state courts retain jurisdiction over cases against the [FDIC] which were pending when the [FDIC] was appointed receiver."  *Holmes Fin. Assocs., Inc.*, 33 F.3d at 562.  In this case, Plaintiffs filed suit in state court prior to the appointment of the FDIC as receiver.

[26] 12 U.S.C. § 1821(d)(6)(B).

[27] *Id.* § 1821(d)(13)(D).

[28] *Office & Prof'l Emps. Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 66 n.7 (D.C. Cir. 1992); *see also id.*

[29] *McKart v. United States*, 395 U.S. 185, 193 (1969) (internal quotation marks omitted).

[30] *Id.*

[31] *Id.*

administrative process" where the relevant agency "is created for the purpose of applying a statute in the first instance."[32] A closely related purpose is that the "administrative agency is created as a separate entity and invested with certain powers and duties" and courts "should not interfere with an agency until it has completed its action."[33] "Typically, exhaustion of administrative remedies is required where Congress imposes such a requirement."[34]

¶ 15 The text of FIRREA creates "a jurisdictional prerequisite by expressly providing that 'no court shall have jurisdiction' over claims against the receiver outside the administrative claims process set forth in section 1821(d)."[35] Thus, we conclude that under the doctrine of administrative exhaustion, the failure to exhaust administrative remedies available through FIRREA deprives a court of subject matter jurisdiction over any action seeking a determination of rights with respect to assets of a failed bank that is in receivership. By tying timely claim application to jurisdiction, we join an overwhelming majority of federal circuits.[36] This does not end our analysis, however, because the

---

[32] *Id.* at 193–94.

[33] *Id.* at 194.

[34] *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 882 (5th Cir. 1992) (citing *Weinberger v. Salfi*, 422 U.S. 749, 756–67 (1975)).

[35] *Thomas*, 255 P.3d at 1080 (quoting 12 U.S.C. § 1821(d)(13)(D)). FIRREA does provide an exception allowing for payment of late-filed claims when a claimant does not receive notice of the receivership. *See* 12 U.S.C. § 1821(d)(5)(C). However, that exception still requires the claimant to file a claim through the administrative review process. *Id.*

[36] *See Farnik v. FDIC*, 707 F.3d 717, 721–23 (7th Cir. 2013) (holding the administrative claims review process of FIRREA is mandatory for all parties bringing claims against the FDIC or RTC as receiver for a failed bank); *accord Tellado*, 707 F.3d at 279–80; *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *McMillian v. FDIC*, 81 F.3d 1041, 1045 (11th Cir. 1996); *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995); *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1006 (4th Cir. 1994); *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1286 (9th Cir. 1994); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 484 (8th Cir. 1993); *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992);

con't.

Plaintiffs' claim was pending in the district court at the time the Bank was placed in receivership. We now answer the question of whether exhaustion is required for a claim that is pursued before a bank is placed in receivership.

### C. Failure to Exhaust FIRREA's Administrative Claims Process Divests a Court of Jurisdiction Over Prereceivership Claims

¶ 16   Plaintiffs filed their action against the Bank in the district court in February 2009, nearly three months before the FDIC was appointed receiver. Plaintiffs argue that FIRREA creates two statutory schemes, one for prereceivership claims, and another for postreceivership claims, and that administrative exhaustion is not required for prereceivership claims. We disagree.

¶ 17   We agree with those federal circuits that hold FIRREA's exhaustion requirements apply equally to both pre- and postreceivership claims.[37] FIRREA states that a claimant may request administrative review, file suit, or "continue an action commenced before the appointment of the receiver."[38] This language reflects express statutory intent to conditionally recognize the viability of claims filed before a receiver is appointed. The condition for viability is that the claim must conform to FIRREA's procedural mandates. FIRREA contains no "language which could be construed to support [the] argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver."[39] Nevertheless, Plaintiffs attempt to point to such language.

---

*Meliezer*, 952 F.2d at 883; *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 63 (3d Cir. 1991); *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991).

[37] *See, e.g., Brady Dev. Co.*, 14 F.3d at 1005–06 (holding FIRREA's exhaustion requirement is mandatory for both pre- and postreceivership claims); *accord Intercontinental Travel Mktg., Inc.*, 45 F.3d at 1282–84; *Bueford*, 991 F.2d at 485; *Marquis*, 965 F.2d at 1151; *Mustang Partners*, 946 F.2d at 106.

[38] 12 U.S.C. § 1821(d)(6)(A)(ii).

[39] *Mustang Partners*, 946 F.2d at 106.

¶ 18   Plaintiffs cite 12 U.S.C. § 1821(d)(5)(F)(ii) in support of their argument that FIRREA contains two statutory schemes, one for suits brought before a bank is placed in receivership and another for after receivership.   We disagree.   Section 1821(d)(5)(F)(ii) states, "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."   The plain language of section 1821(d)(5)(F)(ii) forecloses Plaintiffs' argument, because it applies when a claimant has filed a claim, thus presuming the administrative claims review process was followed.[40]   Although section 1821(d)(5)(F)(ii) states that an existing action is not prejudiced by the filing of an administrative claim and may be "continue[d]," it does not address the failure to file a claim, nor does it imply the claims process need not be followed.[41]   Instead, this provision is consistent with section 1821(d)(6), which permits a claimant to file suit or continue a previously filed action after exhausting the administrative claims process.   "Congress plainly intended the administrative claims process to provide a streamlined method for resolving most claims against failed institutions in a prompt and orderly fashion, without lengthy litigation."[42]

¶ 19 FIRREA creates one scheme for both pre- and postreceivership cases under which a court retains jurisdiction. This is not to say that the mere appointment of a receiver divests a court of jurisdiction.   Rather, "FIRREA expressly allows for preexisting actions to be stayed" and states that "such actions may be 'continue[d]' following completion of the administrative claims process."[43]   Thus, FIRREA allows a court to suspend, rather than dismiss, suits, "subject to a stay of [the] proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims."[44]   None of the provisions diminish the importance of the statutory claim review

---

[40] *See Thomas*, 255 P.3d at 1079.

[41] *Id.* at 1079–80.

[42] *Id.* at 1080 (internal quotation marks omitted).

[43] *Id.* (alteration in original) (citing 12 U.S.C. §§ 1821(d)(12), (d)(5)(F)(ii), (d)(6)(A)(ii)).

[44] *Id.* (internal quotation marks omitted).

process.  A district court acquires or retains jurisdiction only after claimants avail themselves of the administrative claims review process.

¶ 20  There is no dispute that Plaintiffs failed to file a claim by the August 5, 2009 deadline.  Plaintiffs submitted their claim on October 8, 2009, sixty-five days after the deadline.  The Plaintiffs' failure to file a claim by the administrative claims review deadline deprived the district court of subject matter jurisdiction.

¶ 21  We now turn to Plaintiffs' alternative arguments that (1) they are excused from the mandatory administrative claims review process and (2) the dismissal of their claims violates due process of the law.

## II.  NO EXCEPTION TO ADMINISTRATIVE EXHAUSTION EXISTS FOR PLAINTIFFS, THUS THEIR CLAIMS ARE SUBJECT TO THE REQUIREMENTS OF FIRREA

¶ 22  Plaintiffs argue that they were excused from administrative exhaustion, and alternatively, FIRREA is not applicable to its claims against the FDIC.  First, Plaintiffs argue that the FDIC failed to provide notice or otherwise manifest its intent to follow the administrative claims review process, thus fitting into an exemption from FIRREA.  Second, Plaintiffs argue that FIRREA is inapplicable because they do not seek payment from any assets of the FDIC or the Bank, and thus they do not present a "claim" as contemplated by the statute.  Third, Plaintiffs argue that their claims are not susceptible to resolution through FIRREA's administrative claims review process because the FDIC tendered defense of the claim to BancInsure, and thus the FDIC did not have the authority to resolve Plaintiffs' claims.[45]  We address each argument in turn.

---

[45] Plaintiffs also assert that under Utah Code section 31A–22–201, BancInsure cannot use the insolvency of the Bank as a defense to liability.  Utah Code section 31A–22–201 states:

> Every liability insurance policy shall provide that the bankruptcy or insolvency of the insured may not diminish any liability of the insurer to third parties, and that if *execution against the insured is returned unsatisfied*, an action may be maintained against the insurer to the extent that the liability is covered by the policy.  (Emphasis added).

con't.

### A. Plaintiffs Had Notice of the Administrative Claims Review Process and Thus FIRREA Applies

¶ 23 Plaintiffs argue that they were excused from administrative exhaustion because the FDIC failed to provide notice or otherwise manifest its intent to follow the administrative claims review process. Plaintiffs also assert that the FDIC was required to (1) stay the pending litigation to allow exhaustion of administrative remedies and (2) substitute itself as a party.

¶ 24 Section 1821(d)(12)(A) states that a "receiver *may* request a stay . . . in any judicial action or proceeding" not to exceed ninety days, and that a request for a stay by a receiver must be granted.[46] The term "may" is permissive; thus the statute does not require that the receiver request a stay. Rather, the purpose of the stay provision is to give the receiver time to familiarize itself with any pending litigation and decide how best to proceed.[47] The FDIC was not required to stay any pending litigation, and we need not inquire as to the reason for its decision to not request a stay.

¶ 25 Nor is the FDIC required to substitute itself as a party to a prereceivership lawsuit. When a receiver is appointed, it is granted all the powers conferred and duties imposed by federal and state law.[48] A receiver may take over the assets of and operate the failed institution with all the power of members,

---

Plaintiffs have not obtained a judgment against either the Bank or the FDIC, let alone had such judgment returned unsatisfied. Thus, Utah Code section 31A–22–201 is simply inapplicable.

[46] 12 U.S.C. § 1821(d)(12)(A)–(B) (emphasis added).

[47] *Praxis Props., Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49, 68 (3d Cir. 1991); *see also FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1303 (11th Cir. 1998) ("[T]he purpose of the stay [is to] give[] the [receiver] a chance to analyze pending matters and [to] decide *how* best to proceed" (alterations in original) (internal quotation marks omitted)); *Armstrong v. Resolution Trust Corp.*, 599 N.E.2d 1209, 1214 (Ill. App. Ct. 1992) ("This stay is designed to give the [receiver] some breathing room to get up-to-speed with the ongoing litigation.") *aff'd*, 623 N.E.2d 291 (Ill. 1993).

[48] 12 U.S.C. § 1821(c)(3)(B).

shareholders, directors, or officers of the institution, and may conduct all business of the institution.[49]   The receiver also "perform[s] all functions of the institution *in the name of the institution* which are consistent with the appointment as . . . receiver."[50]   By operation of law, the FDIC may perform any functions, including bringing or being named as a party in legal proceedings, in the name of the receiver.   Accordingly, substituting the FDIC as a party was not required.

¶ 26  Finally, Plaintiffs assert that the FDIC failed to provide notice of the FIRREA administrative claims review process.  We disagree.  Plaintiffs' argument focuses on the narrow exception to the rejection of an untimely administrative claim under 12 U.S.C. § 1821(d)(5)(C)(ii).   This section's narrow exception states that a claim submitted after the published deadline may be considered by the receiver only if "the claimant did not receive notice" in time to file a claim by the deadline and "such claim is filed in time to permit payment of such claim."[51]

¶ 27 However, in this case, the record is replete with references to both published and mailed notices.[52]   The FDIC

---

[49] *Id.* § 1821(d)(2)(B)(i).

[50] *Id.* § 1821(d)(2)(B)(iii) (emphasis added).

[51] *Id.* § 1821(d)(5)(C)(ii).

[52] The notice mailed to creditors stated that any creditor "must present the properly completed Proof of Claim Form and the supporting documentation to the Receiver on or before the Claims Bar Date referenced in the above subject caption.  If you do not file your claim on or before the Claims Bar Date, the Receiver will disallow your claim."   The notice then outlined the process available to a creditor should the receiver disallow the claim, including filing or continuing a lawsuit.   The notice concluded with a statement that a claimant who fails to file or continue a lawsuit within sixty days "will have no further rights or remedies with respect to [their] claim."   The published notice also stated that "all creditors having claims against the Failed Institution must submit their claims in writing, together with proof of the claims, to the Receiver by August 05, 2009."  The notice continued, "with certain limited exceptions, failure to file such claims by the Bar Date [August 5, 2009] will result in disallowance by the Receiver, the disallowance will be final, and further rights or
con't.

originally published notice on May 7, 2009, and again on June 8 and July 8, 2009, in the two most widely circulated newspapers in Utah, *The Salt Lake Tribune* and the *Deseret News*. These notices complied with the requirements of FIRREA.[53] The published and mailed notices are clear; a claimant *must* submit a proof of claim form, after which the FDIC will allow or disallow the claim. Only after disallowance may a claimant seek judicial remedies or continue a previously filed action.

¶ 28 Plaintiffs claim that not all of them received notice. We find this argument without merit. A failure to mail notice "does not relieve the [creditor] of the obligation to exhaust administrative remedies," provided the creditor had actual notice of the FDIC's appointment as receiver.[54] The FDIC mailed notice to Mr. Durbano, Durbano Development, and Durbano Law Firm because they were parties listed as creditors of the Bank due to the litigation filed prior to receivership. Mr. Durbano and Durbano Law Firm were listed as the manager and servicing agent, respectively, for Summerhaze, Antion, Durbano Properties, and Durbano Development. Mr. Durbano was listed as both the manager and servicing agent for Durbano Law Firm. Mr. Durbano testified that he personally received notice of the administrative claims review process. Although Mr. Durbano testified that he believed the notice of the administrative claims review process was in relation to a separate matter, he was also the CEO of the Bank and was personally aware of the Bank's

---

remedies with regard to the claims will be barred." Both the published and mailed notices reference 12 U.S.C. §§ 1821(d)(5)(C) and –(d)(6).

[53] 12 U.S.C. § 1821(d)(3)(B)–(C).

[54] *Freeman v. FDIC*, 56 F.3d 1394, 1402 (D.C. Cir. 1995); *see also Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278, 1285 (9th Cir. 1994) (noting that a merely negligent failure to mail actual notice to a creditor does not relieve a creditor from exhausting administrative remedies); *Marketplace/Ken Caryl Partners, Ltd. v. Vitorio Inv. Co.*, 778 F. Supp. 29, 30 (D. Colo. 1991) (noting that receiver's alleged failure to publish notice to creditors did not rise to the level of affirmative misconduct warranting an excusal from the administrative claims review process).

receivership status. Mr. Durbano also filed a claim for Durbano Law Firm through the administrative claims review process for $162,500 in legal fees by the claims review deadline.

¶ 29 Furthermore, "when the [receiver] knows that a claimant is represented by counsel with regard to a claim, and especially when litigation is pending, it is entirely proper for the [receiver] to notify the claimant of the receivership via [his or her] attorney."[55] "Indeed, to do otherwise might be an improper communication with a represented party, and could well be a breach of professional ethics."[56] The FDIC mailed notice to Plaintiffs' counsel of record due to the litigation pending at the time the Bank was placed in receivership.

¶ 30 The district court correctly found that Plaintiffs had actual notice of the August 5, 2009 administrative claims review process deadline. It is undisputed that Plaintiffs filed a claim on October 8, 2009—more than two months after the claims deadline. Based on our review of the record, we conclude the district court properly concluded that Plaintiffs had notice of the August 5, 2009 deadline to submit claims under the administrative claims review process.

### B. *Plaintiffs Sought Payment from the Bank's Assets and Thus Presented a Claim Regulated by FIRREA*

¶ 31 Plaintiffs assert that FIRREA is inapplicable to their claim. Specifically, Plaintiffs argue that, under 12 U.S.C. § 1821(d)(13)(D), the Bond is not an asset of the Bank or the FDIC, and thus FIRREA is inapplicable to their claim. We disagree. The threshold question is not whether Plaintiffs would ultimately collect from the Bond; rather, it is whether the Bond is an asset of the Bank.[57] FIRREA states that no court has jurisdiction over any claim to or action against the assets of a bank in receivership.[58]

---

[55] *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 486–87 (8th Cir. 1993).

[56] *Id.* at 487; *see also* UTAH R. CIV. P. 5(b)(1) ("If a party is represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court.").

[57] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384 (3d Cir. 1994).

[58] 12 U.S.C. § 1821(d)(13)(D).

"The term 'asset' is not defined in the statute."[59] However, the ordinary meaning of "asset" is broad. It is defined as "[a]n item that is owned and has value" or "[a]ll the property of a person . . . available for paying debts or for distribution."[60] "Insurance policies which a bank has purchased and under which it is an insured fall neatly within this definition of assets."[61] An insurance policy is valuable to the owner of the policy even though the owner of the policy may never be entitled to recover under the policy.[62] Additionally, the broad meaning of "asset" can include liability insurance, as one purpose of liability insurance is to protect other assets against tort claims.[63] For these reasons, we conclude the plain meaning of "asset" contained in section 1821(d)(13)(D)(i) includes the insurance policy purchased by the Bank from BancInsure.[64]

¶ 32 We further hold that Plaintiffs were required to present a "claim" as contemplated by FIRREA. Section 1821(d)(13)(D)(ii) "explicitly bars jurisdiction over *any* claim relating to *any* act or omission of [a] failed financial institution."[65] There is no qualification of the terms "act or omission,"[66] and the statutory provision should be given "the full scope that [the] text demands."[67] The statute applies to creditors' claims,[68] consumer

---

[59] *Samuels v. Acme Mkt.*, 845 F. Supp. 292, 294 (E.D. Pa. 1994).

[60] BLACK'S LAW DICTIONARY 134 (9th ed. 2009).

[61] *Nat'l Union Fire Ins. Co.*, 28 F.3d at 384.

[62] *See id.*

[63] *Samuels*, 845 F. Supp. at 294.

[64] *See Nat'l Union Fire Ins. Co.*, 28 F.3d at 384–85; *see also Holloway v. State*, 566 A.2d 1177, 1180 (N.J. Super. Ct. Law Div. 1989) (rejecting a claim that insurance policies are not assets).

[65] *Demelo v. U.S. Bank Nat'l Ass'n*, 727 F.3d 117, 122 (1st Cir. 2013) (internal quotation marks omitted).

[66] *Decrosta v. Red Carpet Inns Int'l, Inc.*, 767 F. Supp. 694, 696 (E.D. Pa. 1991).

[67] *Demelo*, 727 F.3d at 123.

[68] *Id.*

protection claims,[69] and "claims which are or should be covered by insurance."[70] This provision also "distinguishes claims on their factual bases" and "does not make any distinction based on the identity of the party from whom relief is sought."[71]

¶ 33 In *Tellado v. IndyMac Mortgage Services*, the plaintiffs brought a claim against a bank that had purchased a failed institution in receivership.[72] Although the suit was filed against the purchasing bank, the claims related to an act or omission of the bank that was the target of FDIC receivership.[73] The Third Circuit Court of Appeals held that because the plaintiffs' claims were wholly dependent upon the wrongdoing of the financial institution that was in receivership, the plaintiffs' claims fell within the ambit of FIRREA.[74]

¶ 34 In the present case, Plaintiffs filed claims against the Bank. The claims included allegations of improper acceptance of unauthorized signatures, negligence, and liability under a theory of respondeat superior. These claims stemmed from losses suffered due to embezzlement by a Bank employee. Thus, the claims relate to an "act or omission" of the Bank—an institution for which the FDIC was appointed receiver—or the Bank's employee. The fact that Plaintiffs sought payment from the Bond is irrelevant. The Plaintiffs' claims are squarely within the ambit of FIRREA.

### C. The Bank's Tender of Defense did not Deprive the Bank or FDIC of the Authority to Resolve Plaintiffs' Claims

¶ 35 Plaintiffs next argue that their claims are not susceptible to resolution through FIRREA's administrative claims review process because the FDIC tendered defense of the claim to

---

[69] *Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279–81 (3d Cir. 2013).

[70] *Decrosta*, 767 F. Supp. at 696.

[71] *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1212 (9th Cir. 2012).

[72] 707 F.3d at 277–78.

[73] *Id.* at 280.

[74] *Id.* at 281.

BancInsure and thus lost authority to resolve the claims. Plaintiffs assert that their "claims are in reality against BancInsure, which made itself the real party in interest by accepting the tender of AWB's defense." We disagree and hold that the tender of defense did not deprive the Bank or the FDIC of the ability to resolve Plaintiffs' claims through the administrative claims review process.

¶ 36 Under the typical liability insurance policy, the insurer has two duties.[75] The sole source of these duties is the insurance contract.[76] First, an "insurer has a duty to indemnify the insured, up to the limits of the policy, for the payment of a judgment based on a liability claim which is covered."[77] Second, the insurer "has a duty to defend the insured against a liability claim which is covered or which is potentially covered."[78] These are two distinct duties, with "an insurer's duty to defend [being] broader than its duty to indemnify."[79] This is because "[t]he duty to indemnify [is] determined by the underlying facts of the case, [while] the duty to defend [is] controlled by the allegations in the complaint against the insured."[80] The duty to defend is a continuing duty[81] that "is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage."[82] If the

---

[75] *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1061 (Md. 1999).

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997).

[80] *Fire Ins. Exchange v. Estate of Therkelsen*, 2001 UT 48, ¶ 23, 27 P.3d 555 (first and third alterations in original) (internal quotation marks omitted).

[81] *Montrose Chem. Corp. v. Superior Court*, 861 P.2d 1153, 1157 (Cal. 1993).

[82] *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1183 (7th Cir. 1980) (noting the contrast with the indemnity obligation, which "matures only when the insured becomes obligated to pay by reason of liability imposed by law"); *see also Montrose Chem. Corp.*,
con't.

Opinion of the Court

"underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy," the insurer must offer a defense.[83]

¶ 37  One of the purposes of tendering a defense is notice. A tender of defense allows an insurer to appear and defend the insured on claims where the insured may ultimately seek to hold the insurer liable.[84]  Although a tender of defense allows the insurer to appear and defend the insured, a tender of defense does not change the real party in interest,[85] and Plaintiffs have provided no authority to the contrary.  If an insurer has notice of a claim against an insured, and "has been afforded an opportunity to appear and defend," regardless of whether the insurer actually appears, any judgment against the insured will also conclusively bind the insurer.[86]  Failure to tender a defense "simply changes the burden of proof and imposes on the [insured] the necessity of again litigating and establishing" that it is entitled to indemnity from the insurer. [87]  Thus, without a tender of defense, an insurer may challenge its liability for the judgment, contest the amount of

---

861 P.2d at 1157 (noting the duty to defend "aris[es] on tender of defense and last[s] until the underlying lawsuit is concluded"); *Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 121 (Minn. 1977) (noting that tender of defense is generally a condition precedent to obtaining indemnification for fees incurred in the defense of a claim which is the responsibility of another party).

[83] *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003) (en banc);  *see also Ledford v. Gutoski*, 877 P.2d 80, 83 (Or. 1994) (en banc) ("The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." (emphasis in original)).

[84] *See* 42 C.J.S. *Indemnity* § 48 (2014).

[85] *See Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 164 (Minn. 1986); *Hermes v. Markham*, 60 N.W.2d 267, 272 (N.D. 1953) (holding that an insured was the real party in interest despite the fact that the insured had assigned his claim to his insurer).

[86] *Hill v. Joseph T. Ryerson & Son, Inc.*, 268 S.E.2d 296, 301–02 (W. Va. 1980) (internal quotation marks omitted).

[87] 42 C.J.S. *Indemnity* § 48 (2013).

damages, or set forth any other available defense that the insured neglected to make.[88]

¶ 38  Once presented with a tender of defense, an insurer that believes it is not liable for coverage has two options.  The insurer may either "protect its interests through a declaratory judgment proceeding" asking the court to determine coverage under an insurance policy,[89] or it may "defend the suit under a reservation of its right to seek repayment later."[90]  However, an insurer "may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage."[91]  An insurer "that refuses a tender of defense by its insured takes the risk not only that it may eventually be forced to pay the insured's legal expenses but also that it may end up having to pay for a loss that it did not insure against."[92]

¶ 39  In the present case, the Bank and the FDIC triggered BancInsure's duty to defend by tendering the defense of Plaintiffs' complaint to BancInsure.  The Bank and the FDIC sought a declaratory judgment regarding coverage under the Bond for the embezzlement by Ms. Padlo.  The declaratory judgment action was stayed because coverage would not be required unless Plaintiffs received a judgment against the Bank or the FDIC.  The tender of defense did not affect the rights of the Bank or the FDIC, nor did it change the real party in interest.  The tender of defense merely triggered the duty of defense under the Bond.  The Bank

---

[88] *See Joseph T. Ryerson & Son, Inc.*, 268 S.E.2d at 302.

[89] *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1382 (7th Cir. 1985); *see also Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102 (Ill. 2005) ("Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy." (internal quotation marks omitted)).

[90] *Gulf Ins. Co.*, 776 F.2d at 1382.

[91] *Solo Cup Co.*, 619 F.2d at 1183.

[92] *Hamlin Inc. v. Hartford Accident & Indem. Co.*, 86 F.3d 93, 94 (7th Cir. 1996).

and the FDIC were still actively involved in the defense of the claims. Therefore, the Bank and the FDIC retained authority to resolve the claims.

### III. THE DISMISSAL OF PLAINTIFFS' LAWSUIT DOES NOT VIOLATE DUE PROCESS UNDER THE UNITED STATES OR UTAH CONSTITUTION

¶ 40 Plaintiffs argue that the dismissal of their complaint denied them due process of law under both the United States and Utah Constitution. Plaintiffs claim that the FDIC sought to "ambush" them by "awaiting expiration of the administrative deadline" in order to dispose of their claim "without consideration of the merits," and deprive them of their opportunity to be heard.

¶ 41 The Due Process Clause prevents "denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed right[s]."[93] Essentially, due process requires "notice and an opportunity to be heard."[94] FIRREA clearly spells out when and how judicial review is available.[95] It expressly provides for de novo judicial review, but only after exhaustion of the administrative procedures.[96] "Since the language of the statute expressly provides for judicial review after exhaustion of the administrative procedures, [Plaintiffs] cannot prevail on [their] claim that FIRREA's administrative procedures deny [them] due process by making judicial review unavailable," because it does not.[97]

---

[93] *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 394 (3d Cir. 1994) (alteration in original) (internal quotation marks omitted).

[94] *Utah Cnty. v. Ivie*, 2006 UT 33, ¶ 22, 137 P.3d 797.

[95] *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 486 (8th Cir 1993).

[96] *See Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 391–92 (3d Cir. 1991); *Bueford*, 991 F.2d at 486; *Resolution Trust Corp. v. Shoreview Builders, Inc.*, 599 A.2d 1291, 1294 (N.J. Super. Ct. App. Div. 1991).

[97] *See Bueford*, 991 F.2d at 486.

¶ 42  We recognize that the FDIC's denial of a claim of one who never received notice of the administrative claims review process would present due process concerns.[98]   However, Plaintiffs did receive notice.[99]  Because Plaintiffs had notice of the claims review process, they were not deprived of due process.[100] Plaintiffs failed to avail themselves of the available claims review process, and this failure to act to protect their rights does not amount to a violation of due process.[101]

## CONCLUSION

¶ 43  We hold that compliance with FIRREA's administrative claims review process is mandatory to vest the district court with subject matter jurisdiction.   Plaintiffs' claims were subject to FIRREA's administrative claims review, they were required to exhaust their administrative remedies, and no exception applied. Plaintiffs failed to comply with the administrative exhaustion requirements of the statute, and failure to comply with the statute deprived the district court of subject matter jurisdiction.   Finally, we hold that the Plaintiffs were not deprived due process of the law as it was their failure to comply with the requirements of FIRREA that deprived them of their opportunity to be heard on their claims.   Accordingly, we affirm the decision of the district court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

---

[98] *See Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 920 (4th Cir. 1996); *Campbell v. FDIC*, 676 F.3d 615, 621 (7th Cir. 2012).

[99] *See supra* Part II.A.

[100] *See Freeman v. FDIC*, 56 F.3d 1394, 1405–06 (D.C. Cir. 1995).

[101] *See id.* at 1406; *Elmco Props., Inc.*, 94 F.3d at 922.