**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

OWNERS INSURANCE COMPANY,

    Plaintiff - Appellee,

v.

JACOB TAYLOR DOCKSTADER,

    Defendant,

and

THOMAS BROOKS,

    Third-Party Plaintiff Counter
Defendant - Appellant,

v.

OWNERS INSURANCE COMPANY,

    Third-Party Defendant Counter
Claimant - Appellee.

No. 19-4156
(D.C. No. 2:18-CV-00173-DAK)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Under Utah law, insurers owe their insureds a fiduciary duty to defend which generally requires they accept settlement offers within the policy limits. See Campbell v. State Farm Mut. Auto. Ins. Co., 840 P.2d 130, 138 (Utah Ct. App. 1992). But the requirement to settle is not absolute. An insurer does not have to accept a settlement offer if no coverage exists—even if the insurer first tendered a defense.

In this case arising under Utah law, Thomas Brooks ("Brooks"), a third-party plaintiff, sued Owners Insurance Company ("Owners") for failing to accept settlement offers made *after* Owners filed a declaratory judgment action disputing coverage. Because it disputed coverage, Owners accepted Brooks' settlement offers contingent on the district court determining coverage existed. The district court ultimately found the insurance policy did not cover Brooks' injuries and so Owners owed no duty to defend. Brooks argues that during the declaratory judgment action, Owners had a duty to settle whether or not coverage existed. We disagree. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's grant of summary judgment in Owners' favor.

I.

Brooks suffered a traumatic brain injury during a fight in a Utah gym when Jacob Dockstader ("Dockstader") hit him in the head with a dumbbell. The blow left Brooks permanently disabled and Dockstader pleaded guilty to aggravated assault (the "criminal case").

2

Following the criminal case, Brooks sued Dockstader for assault and battery and negligence (the "civil case").[1] Dockstader demanded that Owners defend and indemnify him under a homeowner's insurance policy the company issued to his parents (the "Policy").

Owners accepted Dockstader's defense but did not believe its Policy covered his conduct. The Policy covered up to $500,000 for "damages . . . arising out of bodily injury . . . caused by an occurrence." It defined "occurrence," in pertinent part, as "an *accident* that results in bodily injury." (emphasis added). The Policy also excluded coverage for intentional acts causing "bodily injury or property damage *reasonably expected or intended* by the insured. This exclusion applie[d] even if the bodily injury or property damage [was] of a different kind or degree, or [was] sustained by a different person or property than that reasonably expected or intended." (emphasis added).

Dockstader argued he did not intend to hit Brooks. Instead, the theory was that Dockstader just "swung a dumbbell in Brooks' general direction to ward him off." So because he did not intend to make contact, the Policy covered this accidental injury.

Unpersuaded, Owners sent Dockstader a reservation of rights letter in February 2018. The letter provided:

> If it is determined that the injury was intentional, then there is no coverage under the insurance policy. Brooks has maintained that the

---

[1] After Owners filed a complaint for declaratory relief, Brooks and Dockstader stipulated to dismiss the assault and battery claim.]

attack was intentional. We are still investigating this claim as you know. As there is the potential that some or all of this loss is not covered, you may wish to retain separate counsel to defend yourself.

Later that month, Owners filed a complaint for declaratory relief requesting a declaration that the Policy did not cover Dockstader's conduct and so it had no duty to defend or indemnify him (the "declaratory judgment action"). Owners' complaint alleged coverage did not exist for two reasons. First, Owners alleged Dockstader's conduct did not meet the Policy's definition of "occurrence" because Dockstader pled guilty to aggravated assault and so this was not an accident. Second, Owners alleged the Policy's intentional acts exclusion precluded coverage because Dockstader reasonably expected or intended to hit Brooks.

After Owners sent the reservation of rights letter and filed its complaint, Brooks made three settlement demands for the Policy limit of $500,000. In each of his offers, Brooks noted that his actual damages far exceeded the Policy limit. Owners conditionally accepted Brooks' first offer. It referenced the declaratory judgment action and said, "[i]f there is coverage, [Owners] will pay the policy limit of $500,000 to Mr. Brooks." When Brooks made a second offer to settle for the policy limits, Owners reiterated its position. When Brooks made a third offer with the same terms, Owners declined to respond.

About one month after Brooks' third settlement offer, Owners filed a motion for summary judgment in the declaratory judgment action. In support of its motion, Owners argued again that no coverage existed because the incident was not an

4

accident and the intentional acts exclusion applied.[2]  With Owners' motion for

summary judgment pending and without including Owners, Brooks and Dockstader

began independent settlement negotiations and entered into a stipulation and

assignment agreement (the "Agreement").  Under the Agreement, Dockstader

admitted liability on Brooks' negligence claim and agreed to an immediate judgment

of $5,000,000.  Brooks agreed not to execute the judgment against Dockstader

personally in exchange for assignment of all Dockstader's rights, benefits, interests,

and claims against Owners.

Brooks then intervened and filed a third-party complaint alleging that Owners

breached its fiduciary duties and the implied covenant of good faith and fair dealing

by failing to settle within Policy limits even though Dockstader faced a significant

likelihood of judgment in excess of those limits.[3]

The district court granted Owners' motion for summary judgment, holding that

"the bodily injury in this case was nonaccidental as a matter of law," because "the

average adult would expect the probability of nontrivial harm as a result of swinging

---

[2] In making this argument, Owners relied on findings of fact in the criminal
case that "there was a punch thrown, and then as several witnesses testified, that Mr.
Dockstader got the 15-pound weight and finished [Brooks] off." The district court
also found that Dockstader's admission to police suggested "Mr. Dockstader knew
that there would be consequences for his actions, and he [was] willing to accept
them."

[3] Brooks' complaint alleged four causes of action: (1) bad faith-breach of
fiduciary duties; (2) breach of contract and the covenant of good faith and fair
dealing; (3) promissory estoppel; and (4) waiver.

a dumbbell close enough to someone's head to scare them."[4]  Thus, "[b]ecause there [was] no coverage under the Policy, Owners[] [*sic*] had no duty to defend."  The district court also held no basis existed for a bad faith claim for refusal to settle because Owners followed Utah law which requires an insurer, under these circumstances, to accept the insured's defense and then seek declaratory judgment as to coverage.

Owners next moved for summary judgment on Brooks' third-party complaint. The district court granted Owners' second motion for summary judgment holding there was "no basis for a bad faith claim for refusal to accept a policy-limit settlement demand."  The district court reiterated that Owners followed Utah Supreme Court precedent and "[n]one of the case law Brooks cite[d] establishe[d] a duty for an insurance company to pay out policy limits in a situation where coverage is debated and a declaratory judgment action is pending."

## II.

We review the district court's grant of summary judgment de novo and view the facts in the light most favorable to the nonmoving party.  Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015) (citation omitted).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[4] Brooks did not appeal the district court's holding that the Policy did not cover Dockstader's conduct.  So for purposes of this appeal we must accept the district court's conclusion that Owners has no duty to indemnify Dockstader under the Policy.

Because this case arises out of diversity, we apply Utah substantive law. Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994) ("A federal court sitting in diversity applies the substantive law . . . of the forum state." (citation omitted))

### III.

Brooks argues the district court erred in holding Owners had no duty to accept Brooks' settlement offers. In effect, Brooks asks us to establish a rule holding that insurers who have accepted a defense must also accept settlement offers within the policy limits—even where the insurer has filed a declaratory judgment action disputing coverage and the district court ultimately finds none.[5] Brooks then asks us to apply that rule here.

We begin our analysis by explaining the duty to defend under Utah law. We then analyze whether the duty to defend includes an absolute duty to settle if an offer falls within the policy limits—even where the insurer has filed a declaratory judgment action disputing coverage and the district court ultimately finds none.

---

[5] The dissent suggests we improperly re-framed Brooks' argument. But his own brief demonstrates the contrary. Brooks asks us to adopt a "rule" that an insurer "has a duty to accept a reasonable settlement offer on behalf of the insured as long as [the insurer] retains control of the insured's defense, regardless of whether there is ultimately coverage under the insurance contract." App. Br. at 18. And under that rule, Brooks argues, "Owners still had a duty to settle, even though the Declaratory-Judgment Action was pending *and* even if there [wa]s ultimately no coverage under the Policy." Id. at 20 (emphasis added).

And to the extent the dissent invites us to ignore facts concerning the non-existence of coverage because they do not fit Brooks' narrative on appeal, we decline that invitation because doing so would allow Brooks "to control [the outcome of this appeal] by omitting record facts from his brief." United States v. Taylor, 514 F.3d 1092, 1098–99 (10th Cir. 2008) (Gorsuch, J.).

7

Because we agree with the district court that under Utah law the duty to settle is not absolute, our analysis ends there.

A.

Under a typical insurance policy issued in Utah, an insurer owes an insured two distinct duties: (1) the duty to indemnify, and (2) the duty to defend. Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp., 332 P.3d 908, 920 (Utah 2014) (citation omitted). And within that duty to defend exists an implied good faith duty to settle. Campbell, 840 P.2d at 138. To determine whether an insurer owes a duty to defend, we look at two documents, the insurance policy and the complaint, and assess whether the complaint alleges a risk covered by the policy. Benjamin v. Amica Mut. Ins. Co., 140 P.3d 1210, 1214 (Utah 2006). But to determine whether an insurer owes a duty to indemnify, we look at the facts of the case. Summerhaze Co., L.C., 332 P.3d at 920. So the duty to defend is "antecedent to and independent of the duty to indemnify." Simmons v. Farmers Ins. Grp., 877 P.2d 1255, 1258 n.3 (Utah Ct. App. 1994). And for that reason, the duty to defend is broader than the duty indemnify because "an insurer may have a duty to defend an insured even if . . . the insurer is ultimately not liable to indemnify the insured." Fire Ins. Exch. v. Estate of Therkelsen, 27 P.3d 555, 560 (Utah 2001). Even still, both duties are "tied to the existence of covered claims." Benjamin, 140 P.3d at 1216 ("Like the duty to defend, the duty to indemnify is tied to the existence of covered claims.").

So the default rule is "'[w]hen in doubt defend,'" because even if a coverage dispute exists "the insurer must defend until those uncertainties can be resolved

8

against coverage." Id. at 1215 (quoting Appleman on Insurance Law and Practice §
136.2[C] (2d ed. 2006)). An even greater duty to defend exists in the third-party
context "because in a third-party situation, the insurer 'controls the disposition of
claims against its insured, who relinquished any right to negotiate on his own
behalf.'"[6] Campbell, 840 P.2d at 138 (quoting Beck v. Farmers Ins. Exch., 701 P.2d
795, 799 (Utah 1985)). Because an insured depends on the insurer to protect his
interests, an insurer must "protect the insured's interests as zealously as it would its
own." Id. at 138 (quoting Beck, 701 P.2d at 799). This default rule protects
insureds and insurers alike because "if an insurer does not defend an action, and a
court finds 'facts which give rise to the potential of liability under the policy,' the
insurer faces significant claims for damages."[7] See Fire Ins. Exch. v. Oltmanns, 416

---

[6] Brooks and the dissent contend that because Owners controlled Dockstader's
defense and he could not negotiate on his own behalf, Owners had to accept Brooks'
settlement offers even if no coverage existed. But their position tells only part of the
story. After Brooks made his first policy limits demand, Owners provided
Dockstader with a reservation of rights letter advising him: "you may wish to retain
separate counsel to defend yourself. Both Rick Glauser and Owners would cooperate
with your counsel." Dockstader then retained counsel, who negotiated a stipulation
and assignment with Brooks which relieved Dockstader of any personal liability for
the injuries he inflicted upon Brooks. So to the extent Brooks and the dissent claim
Owners exercised exclusive control over the defense and settlement of the claims, the
record belies their position.

[7] If an insurer fails to provide a defense, an insured may bring a claim for
breach of the contract term promising to defend and for breach of an insurer's
fiduciary duty. See Beck, 701 P.2d at 799–801. Thus, "an insurer may be liable for
the entire judgment entered against its insured or any settlement that the insured and
the third-party reach even if it exceeds the policy limits." Oltmanns, 416 P.3d at
1162 (Durham, J., concurring) (citation omitted).

9

P.3d 1148, 1162 (Utah 2018) (Durham, J., concurring) (quoting <u>Deseret Fed. Sav. &</u>

<u>Loan Ass'n v. U.S. Fid. & Guar. Co.</u>, 714 P.2d 1143, 1146 (Utah 1986)).

If an insurer accepts a defense but disputes coverage, it has two options: (1) it

may "defend the suit under a reservation of its right to seek repayment later"; or (2) it

may "'protect its interests through a declaratory judgment proceeding' asking the

court to determine coverage under an insurance policy." <u>Summerhaze Co., L.C.</u>, 332

P.3d at 921 (quoting <u>Hartford Accident & Indem. Co. v. Gulf Ins. Co.</u>, 776 F.2d

1380, 1382 (7th Cir. 1985)). An insurer can only proceed under option one *if* the

insurance policy contains a clause specifically allowing reimbursements. <u>U.S. Fid. v.</u>

<u>U.S. Sports Specialty</u>, 270 P.3d 464, 468 (Utah 2012). If the policy has no

reimbursement clause, the insurer should "tender a defense and seek a declaratory

judgment as to coverage under the policy." <u>Summerhaze Co., L.C.</u>, 332 P.3d at 921

n.89 (quoting <u>Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.</u>, 828

N.E.2d 1092, 1102 (Ill. 2005)).

Owners believed the Policy did not cover Dockstader's conduct but it abided

by the default rule and accepted his defense. In theory, Owners then had two

options: (1) it could settle the suit and seek repayment later; or (2) it could seek a

declaratory judgment on the Policy's coverage. But Owners could not pursue option

one because the Policy did not have a reimbursement clause. <u>See</u> <u>U.S. Fidelity</u>, 270

P.3d at 468. Brooks concedes as much but argues that Owners "must bear the

consequences" of its decision to not include such a clause. We reject Brooks'

argument because Utah law does not require that insurers include reimbursement clauses in their policies.

So to avoid liability and avoid a claim of bad faith, Owners had to proceed under option two and it did—Owners brought a declaratory judgment action asking the district court to determine coverage. Although Utah law requires that an insurer defend until uncertainties are resolved against coverage, the fundamental question becomes: does the duty to defend include an absolute duty to settle even where the insurer has filed a declaratory judgment action disputing coverage *and* the district court ultimately finds none? We conclude it does not.

B.

"Stated generally, an insurer owes its insured a duty to accept an offer of settlement within the policy limits when there is a substantial likelihood of a judgment being rendered against the insured in excess of those limits." Campbell, 840 P.2d at 138 (citation omitted). But Utah qualifies this duty to settle within policy limits. "The test of the insurer's conduct is one of reasonableness." Id. (citation omitted). And Utah recognizes that it would be unreasonable to require an insurer "to accept *any* offer below the policy limits, regardless of circumstances, and however questionable the issues of liability and damage may be." Ammerman v. Farmers Ins. Exch., 430 P.2d 576, 579 (Utah 1957) (emphasis added). Instead, Utah gives an insurer "a reasonable latitude of discretion to decide whether it will accept a proposed settlement." Id. When making this determination an insurer may consider "the certainty or uncertainty as to the issues of liability, injuries, and damages." Id.

11

Because there are many variables to consider, we do not automatically equate failure to settle with bad faith. Id. Brooks in essence argues that where an insurer provides a defense under a reservation of rights, it must accept settlement offers within the policy limits—even if the insurer has filed a declaratory judgment action disputing coverage and the district court ultimately finds no coverage exists. Brooks cites no Utah authority supporting this rule.

Brooks relies on general principles from Campbell to argue that Owners unreasonably failed to settle his case within policy limits. But Campbell does not advance the ball for Brooks because no one in Campbell disputed coverage. And multiple authorities establish that an insurer has no duty to settle if no coverage exists.[8] We are also unaware of any cases finding the opposite and extending the

---

[8] We recognize that various courts have addressed this issue in circumstances which may not be factually identical to this case. Even still, those courts' commonsense holdings reach the same general conclusion—when coverage does not exist, an insurer does not owe a duty to settle. See DeWitt v. Monterey Ins. Co., 138 Cal. Rptr. 3d 705, 719 (Cal. Ct. App. 2012) ("[A]n insurer has a duty to accept a reasonable settlement offer only with respect to a *covered* claim." (internal citations and quotation marks omitted)); Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 842, 848 (Tex. 1994) ("[A]n insurer has no duty to settle a claim that is not covered under its policy."); Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co., 753 F.2d 824, 826 (10th Cir. 1985) (holding that, under New Mexico law, where the insured had no coverage the insurer did not act in bad faith or negligently by failing to pay, because with "no duty to settle a claim, there can be no negligent or bad faith refusal to settle").

12

duty to settle as far as Brooks and the dissent suggest.[9, 10]  Moreover, the <u>Campbell</u>

court noted that when determining reasonableness of a decision not to settle, "[t]he

---

[9] Neither Brooks nor the dissent draw our attention to a single case where a court held that an insurer owed a duty to settle an uncovered claim, and this undermines their position.  In fact, Brooks' own authorities—a California Supreme Court case and the Restatement of the Law of Liability Insurance—undercut his arguments.  Both provide that if an insurer declines "a reasonable settlement offer within the policy limits because it does not believe the policy provides coverage," then the insurer "assumes the risk it will be held liable for all resulting damages including a judgment that exceeds policy limits."  <u>Blue Ridge Ins. Co. v. Jacobsen</u>, 22 P.3d 313, 318 (Cal. 2001).  <u>See also</u> Restatement of the Law of Liability Insurance § 25 cmt. (a) ("Reservation of rights does not eliminate the duty to make reasonable settlement decisions, but there is no such duty for noncovered actions.").  At bottom, this case presents nothing more than an issue of risk because if an insurer "makes an unreasonable settlement decision . . . the insurer will be responsible for any excess judgment that results at the trial of the legal action along with other appropriate damages, provided that the action is determined to be covered."  Restatement of the Law of Liability Insurance § 25 cmt. (a).

The dissent argues that <u>Blue Ridge</u> is contrary to our position because the California Supreme Court specified that "in determining whether a settlement offer is reasonable, an insurer may not consider the issue of coverage."  <u>Blue Ridge Ins. Co.</u>, 22 P.3d at 318 (citing <u>Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau</u>, 538 P.2d 744 (Cal. 1975)).  The dissent also argues that our holding runs contrary to § 24 of the Restatement of the Law of Liability which provides that "[a] reasonable settlement decision is one that would be made by a reasonable insurer that bears the sole financial responsibility for the full amount of the potential judgment."  But the dissent's reliance on select portions of these authorities is misplaced.  We are not tasked with determining the reasonableness of Brooks' settlement offers.  Instead we must determine whether Owners owed an absolute duty to settle during the pendency of a declaratory judgment action disputing coverage and where the district court ultimately found none.  Because Utah law specifies that the duty to defend is tied to the existence of a covered claim, Owners owed no duty to defend where the court determined no coverage existed.

[10] The dissent wishes to ignore the district court's determination that the Policy did not cover Dockstader's conduct and instead focus on "whether, considering the circumstances that existed at the time of Brooks' settlement offers, Owners acted reasonably in rejecting those offers."  Dissent at 11.  But entirely ignoring coverage

13

proper focus is on the insurer's decision to reject offers of settlement and instead proceed to trial." See 840 P.2d at 141.

Here, Owners embraced its rights under Utah law in seeking declaratory relief. And with the declaratory judgment action pending, Owners conditionally accepted Brooks' settlement offer. It said, "[i]f there is coverage, will pay the policy limit of $500,000 to Mr. Brooks." Owners did not gamble in deciding whether to accept an offer or take the case to trial. If the Policy covered Dockstader's conduct, Owners agreed to pay Brooks the Policy limit—trial was never a consideration. Moreover, in pursuing a declaratory judgment action, Owners bore the risk that the district court would determine coverage existed and it might be on the hook for any judgment in excess of Brooks' settlement offers—even if the excess exceeded the Policy limits. So the risks associated with Owners' conditional acceptance of Brooks' settlement

---

would run contrary to Utah law, which specifies that the duty to defend "is tied to the existence of covered claims." Benjamin, 140 P.3d at 1216. Because the Policy did not cover Dockstader's conduct, Owners did not owe a duty to defend and so Owners did not owe an implied good faith duty to settle.

And if we follow the dissent's logic to its natural conclusion, an insurer would have to pay an uncovered claim so long as a third-party claimant made a settlement offer before a district court rendered a decision about coverage. The dissent's approach would undermine Utah law by making the insurer's right to seek a declaratory action illusory.

14

offers were borne by Owners not Dockstader.[11, 12] Owners' risk paid off as it later

received a court judgment, which Dockstader did not appeal, declaring that the policy

at issue provided no coverage.

Contrary to Brooks' assertions, Utah has "never held that an insurer must

defend against all third-party claims that could 'conceivably' fall within insurance

coverage." Oltmanns, 416 P.3d. at 1154. Although Brooks relies on the Oltmanns

concurrence for the following rule: "the right to bring a declaratory judgment action

to determine a coverage question does not relieve the insurer of the duty to defend

---

[11] The dissent is correct that Utah law views a conditional acceptance as a counteroffer. But that distinction is purely semantic and does not affect the outcome of this case. Whether or not we characterize Owners' responses as conditional acceptances or counteroffers, Owners had filed a declaratory judgment action disputing coverage by the time Brooks made any settlement offers. And the district court ultimately found the Policy did not cover Dockstader's conduct. Our characterization of Owners' responses does not alter either of those relevant facts.

[12] We offer no opinion on whether Owners would have owed a duty to accept Brooks' settlement offers outright had the district court ultimately found coverage, because those are not the facts before us. We merely recognize that insurers who make unreasonable settlement decisions may be responsible for any excess judgment, provided coverage exists. See Jacobsen, 22 P.3d at 318. See also Restatement of the Law of Liability Insurance § 25 cmt. (a).

The dissent argues Dockstader bore the risk of excess judgment, not Owners. The dissent is correct that Owners' liability for an excess judgment is not automatic. For Owners to be liable, the court would have to find the Policy covered Dockstader's conduct and that Owners breached the duty it owed Dockstader. See Restatement of the Law of Liability Insurance § 25 cmt. (a); Beck, 701 P.2d at 802–03. But if the district court did, then Owners would have been liable for damages associated with its failure to settle—"including a judgment that exceeds the policy limits." See Beck, 701 P.2d at 802–03 (holding that an insurer may be liable for more than the policy limits if it has breached the duty of good faith).

15

during the pendency of the declaratory judgment action if there is a potentially viable third-party liability claim," the Utah Supreme Court disavowed the concurrence's dicta. Id. at 1154 (majority opinion), 1164 (Durham, J., concurring).

In the end, Utah law requires reasonableness, and Owners acted reasonably. Owners reasonably believed the Policy did not cover Dockstader's conduct because it knew Dockstader pled guilty to aggravated assault and it knew Brooks' complaint, in part, alleged intentional conduct. So rather than accept Brooks' settlement offer outright, Owners qualified its acceptance. Given the latitude afforded insurers in deciding whether to accept a proposed settlement, Owners responded within the bounds of Utah law. And the reasonableness of Owners' position was confirmed by the district court's uncontested determination that the Policy provided no coverage for the injuries Dockstader caused Brooks. So, Owners ultimately owed no duty to defend or indemnify Dockstader at all and therefore no duty to settle under these facts.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

16

No. 19-4156, *Owners Insurance Co. v. Dockstader*
**BRISCOE**, Circuit Judge, dissenting.

I respectfully dissent. In my view, reasonable jurors could find that defendant Owners Insurance Company (Owners) acted in bad faith by placing its own interests above those of its insured, Jacob Dockstader, and rejecting the three policy-limits settlement offers that were made by Thomas Brooks. Consequently, I conclude that the district court erred in granting summary judgment in favor of Owners on the bad faith claim asserted against it by Brooks.

I

Because the chronology of events is key here in understanding each parties' relative rights and duties, I begin by outlining in detail the underlying facts.[1] On March 12, 2014, Owners issued a Homeowners Insurance Policy (the Policy) to Dockstader's parents, Steve and Jill Dockstader. The Policy, number 48-819-745-11, was effective from April 20, 2014, to April 20, 2015.

The Policy contained the following relevant coverage provisions:

a. Coverage E – Personal Liability

(1) We will pay all sums any insured becomes legally obligated to pay as damages because of or arising out of bodily injury or property damage caused by an occurrence to which this coverage applies.

---

[1] The majority does not dispute any of these facts. Curiously, however, the majority asserts that the dissent "ignore[s] facts concerning the non-existence of coverage because they do not fit Brooks' narrative on appeal." O&J at 7 n.5. But the majority fails to identify precisely what facts it is referring to.

1

. . .

> We will settle or defend, as we consider appropriate, any claim or suit for damages covered by this policy.

Aplt. App., Vol. I at 133–34. The phrase "bodily injury" was defined in the Policy to mean "physical injury, sickness or disease sustained by a person including resulting death of that person." *Id.* at 116. "Occurrence" was defined as "an accident that results in bodily injury or property damage and includes, as one occurrence, all continuous or repeated exposure to substantially the same generally harmful conditions." *Id.* at 117.

The Policy contained the following relevant exclusion to personal liability coverage:

> a. Coverage E – Personal Liability . . . do[es] not apply:
>
> . . .
>
> (12) to bodily injury or property damage reasonably expected or intended by the insured. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property than that reasonably expected or intended.

*Id.* at 134–35.

On October 14, 2014, Dockstader, who was 21 years old at the time, was exercising at a gym in St. George, Utah. Dockstader became involved in an altercation with Brooks, who was also exercising at the gym. The altercation allegedly began with an exchange of words. At some point thereafter, Dockstader swung a fifteen-pound dumbbell at Brooks. The dumbbell struck Brooks in the head, rendering him

2

unconscious. Brooks was transported to a local hospital, where he remained for approximately one week. As a result of the blow to his head, Brooks suffered a permanent traumatic brain injury and is permanently disabled.

Dockstader was charged in Utah state court with aggravated assault, a second-degree felony under Utah state law. On July 15, 2015, Dockstader was tried and found guilty of that charge. The state trial judge who heard the evidence found that Dockstader was not acting in self-defense when he struck Brooks with the dumbbell, and that Dockstader was guilty beyond a reasonable doubt of aggravated assault. On August 25, 2015, Dockstader was sentenced to an indeterminate term of imprisonment of one to fifteen years. The 210 days that Dockstader served in jail awaiting trial were credited to his sentence, and the remainder of the sentence was suspended.

On February 6, 2017, Brooks filed a civil complaint in Utah state court against Dockstader (the state tort case). Brooks alleged in his complaint that Dockstader either negligently struck him with the dumbbell or, alternatively, that Dockstader intentionally struck him with the dumbbell.

On March 1, 2017, Dockstader sent a letter to Owners requesting that Owners defend and indemnify Dockstader from Brooks's complaint under the Policy. Owners agreed to assume the defense of Dockstader and hired a law firm to defend Dockstader against Brooks' tort action.

On February 1, 2018, nearly a year after assuming the defense of Dockstader, Owners issued a reservation of rights letter, noting that if Dockstader intentionally struck

3

Brooks, the claim would not be covered under the Policy. On February 26, 2018, Owners initiated these federal proceedings by filing a complaint for declaratory relief against Dockstader. Owners sought a declaration that the Policy did not cover Dockstader's conduct and that Owners consequently had no duty to defend or indemnify him.

Dockstader testified during his deposition in the state tort case that he did not intentionally strike Brooks with the dumbbell, and that he believed he had sufficient strength and control to stop the dumbbell from hitting Brooks (this testimony was contrary to the factual findings made by the state trial court that presided over Dockstader's criminal trial). Following Dockstader's deposition, Brooks dismissed his intentional tort claim and pursued only his negligence claim against Dockstader.

On June 5, 2018, Brooks made a written offer "to fully and finally release his claims against . . . Dockstader in exchange for $500,000," i.e., the limits of the Policy. Aplt. App., Vol. III at 574. Brooks asserted that his "damages far exceed[ed]" the Policy limits. *Id*. In particular, he noted that his "injury-related past medical expenses exceed[ed] $214,000," his "loss of future earnings substantially exceed[ed] $800,000," and his "non-economic damages [we]re enormous." *Id*. at 580–81.

On June 27, 2018, Owners responded by letter to Brooks' settlement offer. In its letter, Owners stated, in pertinent part:

> As you know, [Owners] does not believe there is any coverage for this incident based upon the findings . . . in the criminal case. * * *
>
> In light of that, [Owners] is willing to agree as follows:

4

1. The parties will agree that this underlying tort case should be dismissed.
2. The parties will see the declaratory action through to a conclusion either by settlement or by a decision. If there is coverage, [Owners] will pay the policy limit of $500,000.00 to Mr. Brooks. Mr. Brooks would have to agree to sign a complete release of all claims against Mr. Dockstader and against [Owners]. Mr. Brooks would also be responsible for satisfying any and all liens from the policy proceeds.
3. If there is no coverage, the case will be concluded.

It seems to [us] that one of the most germane issues in this case is one of coverage and it makes sense to proceed as outlined above. Would you be kind enough to let [us] know if that is acceptable to you.

*Id*. at 588–89.

On June 29, 2018, Brooks responded by letter to Owners' suggested settlement terms:

We have received your June 27, 2018 letter refusing our offer to settle now for the policy limit, instead offering to pay the policy limit only after the conclusion of the declaratory action. We ask you to reconsider. Your offer seeks to transfer risk of coverage from the insurer to a third-party, [Brooks]. Not only is this inappropriate, but this is counter to Utah law.

As detailed in our June 5, 2018 letter, liability and causation are clear, and . . . Brooks' damages far exceed . . . Dockstader's personal injury policy limit of $500,000. Your letter can be interpreted as nothing short of a denial of a good faith offer to settle this matter. *See Hawaiian Equip. Co. v. Elmco Corp.*, 115 Utah 590, 604, 207 P.2d 794, 801 (1949) (explaining that an acceptance which imposes terms or conditions not present in the original offer is not acceptance).

Under the totality of the circumstances in this case, a reasonable insurer would settle this matter within its policy limit, thereby protecting its insured from a judgment in excess of the policy limit. Owners . . . should do the same on behalf [of] . . . Dockstader. Should you refuse this offer, we will ask for an excess of the policy limit at trial.

> This offer to reconsider and settle for the policy limit shall remain open until July 4, 2018.

*Id*. at 591.

On July 3, 2018, Owners responded by letter. Owners denied "asking any party to assume any risk in this case other than those created by the facts of the case," and asserted that it was "handling the case in accordance with Utah law" by "commenc[ing] a declaratory judgment action" and "continu[ing] to defend [Dockstader] throughout this process." *Id*. at 593. Owners further stated in its letter:

> The intent of Owners' offer was to relieve the parties of extra expense and time by focusing on the declaratory judgment action which much [sic], of necessity, be resolved at some point. Both Mr. Brooks and Mr. Dockstader has [sic] the right to proceed with the personal injury action before moving onto the coverage action. But to suggest that Owners must abandon its reasonable defense that Mr. Dockstader's actions were intentional, particularly when supported by a jury verdict beyond a reasonable doubt to that fact, is inconsistent with Utah law and the obligations imposed on an insurer.

> Owners['s] . . . position as outlined in the June 27, 2018 letter remains unchanged. We look forward to hearing from you.

*Id*.

Approximately two months later, on September 4, 2018, Brooks sent a third letter to Owners. At the outset, Brooks noted that he had "twice proposed to settle" the case for the Policy limits, but that both "offer[s] ha[d] been rejected" by Owners. *Id*. at 595. He noted, however, that at no time did Owners "dispute that a settlement for the Policy limits [wa]s reasonable," nor did it "challenge[] liability, the proposition that damages w[ould]

6

exceed Policy limits," or "request[] additional information to evaluate the reasonableness of [his] offer." *Id*. Brooks disagreed with Owners' assertion that it "should be free to resolve its purported coverage dispute with . . . Dockstader before settling [Brooks' suit] for the Policy limits," and thus "ma[de] a final offer to resolve th[e] case" for the Policy limits "before proceeding with the Lawsuit and obtaining a judgment against . . . Dockstader in excess of the Policy's limits." *Id*. Brooks asserted in support of his offer that "a high likelihood exist[ed] that [he] w[ould] obtain a judgment against Dockstader . . . well above Policy limits," and that "a verdict in excess of $5 million [wa]s not only obtainable but . . .likely." *Id*. at 596. Brooks rejected as "unreasonable" Owners' attempt "to condition the payment of policy limits on the resolution of [its] declaratory judgment action," and he noted that Owners "must continue to discharge its duties" to Dockstader "during the pendency of the declaratory judgment action." *Id*. Brooks stated that "[t]his final offer to settle for the Policy's limits [would] expire[] on September 6, 2018," and that Owners' "[f]ailure to accept" the offer "w[ould] force [him] to seek a judgment against . . . Dockstader in excess of the Policy's limits." *Id*. at 597. "To this end," Brooks stated, he "[wa]s willing to enter into a settlement with . . . Dockstader in which . . . Dockstader w[ould] stipulate to liability, causation, and judgment in the amount of $5 million and w[ould] assign any and all claims he may have against [Owners] relating to [its] handling of the claim under the Policy." *Id*.

7

Owners did not respond to Brooks' September 4, 2018 letter. Instead, on September 21, 2018, Owners filed a motion for summary judgment in this federal declaratory judgment action which had pended since February 26, 2018.

On September 25, 2018, Brooks and Dockstader, who were acting independently of Owners, entered into a written stipulation and assignment. *Id.*, Vol. I at 209. Under the terms of that stipulation and assignment, Dockstader "agree[d] to an immediate judgment by confession against him . . . in the total amount of $5 million," representing "the limit of liability of . . . Dockstader to . . . Brooks for [Brooks'] [l]awsuit." *Id.* at 210–11. Dockstader also "assign[ed] to . . . Brooks any and all rights, benefits, and other interests to and under the . . . Policy and any and all claims that he m[ight] have against . . . Owners arising out of or relating to" Brooks's negligence claim against him, "including but not limited to the claim pertaining to . . . Owners' defense of [Brooks's lawsuit]." *Id.* at 211. Brooks in turn represented that he would only seek to execute the judgment "through the pursuit of the" claim assigned to him by Dockstader. *Id.*

On October 18, 2018, Brooks moved to intervene in this federal action. The district court granted Brooks' motion and, on November 5, 2018, Brooks filed a third-party complaint against Owners. Brooks alleged in his third-party complaint, in part, that "[u]nder Utah Code § 31A-26-303(3)(h), Owners did 'not attempt[] in good faith to effectuate a prompt, fair, and equitable settlement of claims in which liability [was] reasonably clear,'" and instead "continually elevated its interests above Dockstader's interests," thereby "plac[ing] Dockstader at risk for a judgment in excess of

8

the" Policy. *Id.* at 155. Brooks asserted four claims for relief against Owners: (1) bad faith – breach of fiduciary duties; (2) breach of contract and the covenant of good faith and fair dealing; (3) promissory estoppel; and (4) waiver. Brooks sought actual damages in excess of $5,000,000, as well as punitive damages.

On March 14, 2019, the district court granted summary judgment in favor of Owners on the claims for declaratory relief asserted in its complaint. The district court concluded that, under Utah state law, "the bodily injury in this case was nonaccidental as a matter of law." *Id.*, Vol. II at 465. The district court in turn concluded "that the Policy did not provide coverage for [Dockstader's] actions" and that "Owners' [sic] had no duty to defend." *Id.* at 466. Lastly, the district court concluded that, under Utah state law, "there [wa]s no basis for a bad faith claim" against Owners "for refusal to settle a claim while a declaratory judgment action [wa]s pending regarding coverage." *Id.* at 467.

Shortly thereafter, Owners moved for summary judgment with respect to the claims asserted by Brooks in his third-party complaint. On October 3, 2019, the district granted Owners' motion. The district court again concluded that "Owners was acting in accordance with the Utah Supreme Court's recommendations in filing a declaratory judgment action" and that, "while the declaratory judgment action was pending and Owners' obligations to defend and indemnify Dockstader were unclear, there could be no basis for a bad faith claim for refusal to accept a policy-limit settlement demand." *Id.*, Vol. III at 651.

9

## II

Brooks argues in his appeal that "[t]he District Court erred in holding Owners had no duty to accept [his] settlement offers." Aplt. Br. at 11. Brooks asserts that "[w]hen the insurer takes control of the insured's defense, the insurer has a duty to act in the insured's best interest in negotiating a settlement" and that, "[u]nder Utah law, the insurer must therefore accept a settlement offer within the policy limit when there is a substantial likelihood of a judgment in excess of the policy limit." *Id.* "In other words," he argues, "the duty to settle depends on whether the insurer controls the defense, not on whether the insurer disputes coverage or whether coverage in fact exists." *Id.* at 11–12. "Because Owners controlled Dockstader's defense," Brooks argues, "it had a duty to accept Brooks' reasonable settlement offers, and there is a genuine dispute regarding whether Owners breached that duty." *Id.* at 12.

## A

The majority reframes the arguments made by Brooks. According to the majority, "[i]n effect, Brooks asks us to establish a rule holding that insurers who have accepted a defense must also accept settlement offers within the policy limits—even where the insurer has filed a declaratory judgment action disputing coverage and the district court ultimately finds none." O&J at 7. And, in turn, the majority states that "the fundamental question" in this case is: "does the duty to defend include an absolute duty to settle even where the insurer has filed a declaratory judgment action disputing coverage *and* the district court ultimately finds none?" *Id*. at 11 (emphasis in original).

10

These are not the arguments made by Brooks, nor are they consistent with the undisputed facts that are before us.[2] The undisputed facts establish that all three of Brooks' offers to settle the state tort action occurred well before the district court in this case ruled in favor of Owners on the issue of coverage. More specifically, Owners rejected the third and final of Brooks' offers by failing to respond on or before September 6, 2018. The district court in this declaratory judgment action did not rule on the issue of coverage until six months later, on March 14, 2019. Thus, the district court's ultimate ruling on the issue of coverage is irrelevant to the question of whether Owners acted in bad faith in the interim in rejecting Brooks' settlement offers. The real "fundamental question" posed in this case, as Brooks argues in his appellate brief, is whether, considering the circumstances that existed at the time of Brooks' settlement offers, Owners acted reasonably in rejecting those offers.[3]

---

[2] The majority denies reframing Brooks' arguments and asserts that Brooks' "own brief demonstrates the contrary." O&J at 7 n.5. Specifically, the majority points to the assertion in Brooks' brief "that an insurer 'has a duty to accept a reasonable settlement offer on behalf of the insured as long as [the insurer] retains control of the insured's defense, regardless of whether there is ultimately coverage under the insurance contract.'" Id. (quoting Aplt. Br. at 18). This quoted portion of Brooks' brief, however, illustrates my point. The gist of Brooks' argument is that the outcome of a related declaratory judgment action is irrelevant to the question of whether the insurer, in the course of defending its insured against a claim brought by a third party, should have accepted a reasonable settlement offer.

[3] The majority also ignores the facts and the law in two other respects. To begin with, the majority erroneously suggests that "Owners conditionally accepted Brooks' settlement offer." O&J at 14. As Brooks himself aptly noted in his June 29, 2018 letter to Owners, Utah law clearly provides that an acceptance must unconditionally assent to

11

I conclude, as to this fundamental question, that Owners was not entitled to summary judgment in its favor.

B

Under Utah state law, a "typical liability insurance policy" imposes several duties on the insurer. *Summerhaze Co., L.C. v. Fed. Deposit. Ins. Corp.*, 332 P.3d 908, 920 (Utah 2014). "First, an insurer has a duty to indemnify the insured, up to the limits of the policy, for the payment of a judgment based on a liability claim which is covered." *Id.* (quotations omitted). "Second, the insurer has a duty to defend the insured against a liability claim which is covered or which is potentially covered." *Id.* (quotations omitted). "These are two distinct duties, with an insurer's duty to defend [being] broader than its duty to indemnify." *Id.* (quotations omitted). The insurer's "duty to indemnify [is] determined by the underlying facts of the case, [while] the duty to defend [is]

---

all material terms presented in the offer or it is a rejection of the offer. In other words, a so-called conditional acceptance constitutes a counteroffer. *E.g., Lebrecht v. Deep Blue Pools and Spas Inc.*, 374 P.3d 1064, 1069 (Utah Ct. App. 2016). Thus, Owners, by refusing to agree to the terms offered by Brooks and suggesting alternative terms of settlement, rejected Brooks' first two offers and made its own counteroffer, which Brooks rejected. And Owners also rejected the third offer by not responding to it.

Further, the majority erroneously states that "in pursuing a declaratory judgment action, Owners bore the risk that the district court would determine coverage existed and it might be on the hook for any judgment in excess of Brooks' settlement offers—even if the excess exceeded the Policy limits." O&J at 14. That statement is neither consistent with the language of the Policy or Utah law. Any judgment in excess of the Policy limits would have, absent a subsequent and successful bad faith action asserted by Dockstader against Owners, been borne by Dockstader, not Owners. Indeed, that is the very reason why Utah state law imposes a duty on an insurer who has assumed its insured's defense to act in the insured's best interests in considering settlement offers.

12

controlled by the allegations in the complaint against the insured." *Id.* (quotations omitted). "The duty to defend is a continuing duty that is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage." *Id.* (quotations and footnote omitted). "If the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must offer a defense." *Id.* (quotations omitted).

If an insurer is "presented with a tender of defense" but "believes it is not liable for coverage," "[t]he insurer may either protect its interest through a declaratory judgment proceeding asking the court to determine coverage under" the policy at issue, "or it may defend the suit under a reservation of its rights to seek repayment later." *Id.* at 921 (quotations omitted). "[A]n insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage." *Id.* (quotations omitted). If an insurer "is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy." *Id.* at 921 n.89 (Utah 2014). In other words, "[w]hen faced with a decision as to whether to defend or refuse to defend, an insurer is entitled to seek a declaratory judgment as to its obligations and rights." *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 237 (Utah 1985). But an insurer has a duty to defend against a potentially viable third-party liability claim "unless relief is obtained by way of a declaratory judgment." *State Farm Mut. Auto Ins. Co. v. Kay*, 26 Utah 2d 195, 487 P.2d 852, 855 (1971), *overruled on other*

13

*grounds by Call*, 712 P.2d 231. Thus, when there is a non-frivolous claim and there is a question as to whether the insurer will have to pay the claim, the insurer should defend the insured until such time as it obtains a declaratory judgment holding that there is no coverage for the loss under the policy.

When an insurer assumes a tendered defense of a third-party claim, it has a duty to its insured to "diligently investigate[]" and "reasonably evaluate[]" the third-party claims "to determine their validity." *Black v. Allstate*, 100 P.3d 1163, 1168 (Utah 2004). "[T]his duty to investigate and reasonably evaluate a third-party claim does not require that the insurer's evaluation ultimately prove to be correct." *Id*. at 1169. "Rather, whether an insurer discharges its duty in these instances hinges upon whether the investigation and subsequent resolution of the claim is fair and reasonable." *Id*.

In defending its insured against a third-party claim, the insurer "controls the disposition of claims against its insured . . . ." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 799 (Utah 1985). "In essence, the contract [of insurance] itself creates a fiduciary relationship because of the trust and reliance placed in the insurer by its insured." *Id.* "The insured is wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected." *Id.* "In addition, when dealing with third parties, the insurer acts as an agent for the insured with respect to the disputed claim." *Id.* Part of the "insurer's implied duty to its insured is to zealously guard the insured's interests when deciding whether to accept an offer of settlement of the third-party's claim or to take the case to trial." *Campbell v. State Farm Mut. Auto. Ins. Co.*,

14

840 P.2d 130, 138 (Utah Ct. App. 1992). "Stated generally, an insurer owes its insured a duty to accept an offer of settlement within the policy limits when there is a substantial likelihood of a judgment being rendered against the insured in excess of those limits." *Id.* "The test of the insurer's conduct is one of reasonableness." *Id.* "As regards offers of settlement, the insurer must give the insured's interests at least as much consideration as it gives its own." *Id.* at 139. "If the insurer breaches this duty, Utah law provides the insured with a cause of action in tort" (i.e., bad faith). *Id.*

Applying these principles to the undisputed facts that are before us, I agree with the district court and the majority that Owners acted appropriately by first assuming the tendered defense of Dockstader and then, after conducting additional investigation, issuing a reservation of rights letter to Dockstader and filing this declaratory judgment action.[4] In other words, up until the time that Brooks made his first settlement demand to Owners, it cannot be seriously disputed that Owners acted reasonably and in good faith with respect to Dockstader, its insured.

The crux of Brooks' bad faith claim, however, is that Owners acted improperly at the time it rejected his three settlement offers. As to that issue, the district court concluded as a matter of law that Owners was not obligated to accept Brooks' settlement

---

[4] Almost a year passed between Owners' acceptance of Dockstader's defense and its filing of this declaratory judgment action. Had Owners acted earlier in filing this declaratory judgment action, it may well have had a decision on the issue of coverage before Brooks made a settlement offer in the state tort action.

15

offers because of the pendency of Owners' own declaratory judgment action disputing coverage. The majority takes things a step further by concluding that Owners had "no duty to settle under these facts" because Owners ultimately prevailed in its declaratory judgment action and thus "owed no duty to defend or indemnify Dockstader at all." O&J at 16. Both of these conclusions, I submit, are contrary to Utah state law.

As previously discussed, the fiduciary duties that are imposed on an insurer who assumes the defense of its insured exist until such time as the insurer obtains relief from those duties "by way of a declaratory judgment." *Kay*, 487 P.2d at 855. Here, that means that, at the time Brooks made his three settlement offers in June and September of 2018, Owners was still obligated to "zealously guard" Dockstader's interests in deciding whether to accept or reject Brooks' offers. *Campbell*, 840 P.2d at 138. Under clearly established Utah law, that required Owners to consider the strength of Brooks' claims against Dockstader in the state court action.[5] Based upon the limited evidence that is contained in our record on appeal, it appears nearly certain that, at the time Brooks made his three settlement offers to Owners, Dockstader would be found liable in the state tort action for Brooks' injuries and the only real questions in the state tort action would have been (a) whether Dockstader acted intentionally or negligently (Brooks dropped his intentional tort claim following Dockstader's deposition), and (b) the extent of Brooks'

---

[5] This is not to say that the strength of the third-party claims is the only factor an insurer may consider. Instead, the point is that the strength of the third-party claims cannot be ignored by an insurer in considering a settlement offer.

16

damages. As to the question of Brooks' damages, it likewise appears fairly certain, given the record in this case, that they would exceed, possibly substantially, the limits of the Policy.

Given my search of the record, there is nothing to suggest that Owners considered these factors in rejecting Brooks' offers. Instead, the record suggests that Owners' rejection of the three offers was motivated solely by Owners' belief that it might prevail on the coverage issue and its interest in waiting for a decision on that issue. That interest, however, was clearly for Owners' own benefit, not Dockstader's. In other words, the record strongly suggests that Owners acted in its own interests, and contrary to the interests of Dockstader, in rejecting Brooks' three settlement offers. And, by doing so, Owners exposed Dockstader to liability substantially in excess of the Policy limits.

Unfortunately, the majority's holding turns the duties imposed on an insurer under Utah law on their head by authorizing an insurer to consider only the strength of its declaratory judgment action in deciding whether to accept or reject settlement offers in the third-party action that it is defending its insured against.[6] In other words, the

---

[6] The majority states that "[n]either Brooks nor the dissent" point "to a single case where a court held that an insurer owed a duty to settle an uncovered claim." O&J at 13 n.9. That is not surprising given the fact that it is well established that "in determining whether a settlement offer is reasonable, an insurer may not consider the issue of coverage." *Blue Ridge Ins. Co. v. Jacobsen*, 22 P.3d 313, 318 (Cal. 2001). The majority also, curiously, suggests that the decision in *Blue Ridge* authorizes "an insurer [to] decline[] 'a reasonable settlement offer within the policy limits because it does not believe the policy provides coverage.'" O&J at 13 n.9 (quoting *Blue Ridge*, 22 P.3d at 318). *Blue Ridge* does not so hold. Indeed, the quoted language from *Blue Ridge* is taken

17

majority's holding effectively frees an insurer, in considering a settlement offer, from any fiduciary duties it owes to its insured, and instead allows an insurer to consider only its own interests regarding coverage.[7]

For these reasons, I conclude that Owners was not entitled to summary judgment on Brooks' bad faith claim, and I would therefore remand that claim to the district court for further proceedings.

---

out of context. What the Supreme Court of California actually stated is that it had previously "held an insurer that fails to accept a reasonable settlement offer within the policy limits because it does not believe the policy provides coverage, assumes the risk it will be held liable for all resulting damages including a judgment that exceeds the policy limits." 22 P.3d at 318 (citing *Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 538 P.2d 744 (Cal. 1975)). Just as importantly, and a fact ignored by the majority in this case, is that the Supreme Court of California emphasized in *Blue Ridge* "that in determining whether a settlement offer is reasonable, an insurer may not consider the issue of coverage," and can instead consider only "whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Id*. (quotation marks omitted).

[7] This is also directly contrary to § 24 of the Restatement of the Law of Liability Insurance, which provides, in pertinent part, that "[a] reasonable settlement decision is one that would be made by a reasonable insurer that bears the sole financial responsibility for the full amount of the potential judgment." Restatement of the Law of Liability Insurance § 24(2). Notably, the majority ignores § 24 altogether and instead looks only to § 25 of the Restatement, which addresses the effect of a reservation of rights on settlement rights and duties. *See* O&J at 13 n.9.

18